**GREENBERG TRAURIG, LLP**

Tyler R. Andrews (SBN 250686) *Pro Hac Vice forthcoming*
andrewst@gtlaw.com
18565 Jamboree Road, Suite 500
Irvine, CA  92612-4410
Telephone: (949) 732-6500
Facsimile: (949) 732-6501

Matthew P. Hoxsie (SBN 034952)
hoxsiem@gtlaw.com
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100

Attorneys for Defendant
CIRCLE K STORES INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Circle K Stores Inc. and Mobivity<br>Holdings Corp.,<br><br>Defendants. | Case No. 2:26-cv-01225-JAT<br><br>[Assigned to Hon. James A. Tielborg]<br><br>**DEFENDANT CIRCLE K STORES INC.'S MOTION TO DISMISS COMPLAINT**<br><br>**(Oral Argument Requested)** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Circle K Stores Inc. ("Defendant" or "Circle K") moves to dismiss the Complaint (ECF No. 1) filed by Plaintiff Daniel D'Agostino ("Plaintiff").  This motion is supported by the following memorandum of points and authorities.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.    INTRODUCTION**

Plaintiff alleges that Circle K violated the Telephone Consumer Protection Act ("TCPA") and Arizona law by sending text messages to Plaintiff. Plaintiff's Complaint should be dismissed because the TCPA does not prohibit text messages—it prohibits only phone calls. *See* 47 U.S.C. § 227(b)(1) (prohibiting the use of an automatic telephone dialing system ("ATDS") "to make any call" or to "initiate any telephone call"); *id.* § 227(c)(5) (permitting "[a] person who has received more than one telephone call within any 12-month period" to utilize the TCPA's private right of action).

As most recently held in *Stockdale v. Skymount Property Group, LLC*, the term "'telephone call' as used in . . . the TCPA does not encompass 'text messages.'" No. 1:25 CV 1282, 2026 WL 591842, at *2 (N.D. Ohio Mar. 3, 2026). The TCPA imposes restrictions on "telephone solicitations," and prohibits "initiat[ing] . . . telephone call[s]." *Id.* The Federal Communications Commission's ("FCC") interpretive regulations do not, and cannot, expand the definition of "telephone call" beyond its ordinary meaning, which does "not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance." *Id.* at *3. Stated simply, Plaintiff does not allege he received any "telephone calls" in violation of the TCPA, and for that reason his TCPA claims must be dismissed in their entirety.

Even if the TCPA applied to text messages, Plaintiff's Complaint should be dismissed because none of the messages were unsolicited, Plaintiff's claim that he received messages before 8:00 A.M. which caused him "sleep deprivation" is without merit as *Plaintiff received the double opt-in confirmation after visiting a Circle K store just seconds before*, and Plaintiff's claims for Arizona law violations fail for the same reasons. Indeed, Plaintiff has seemingly manufactured this case to harass Circle K and attempt to pull the wool over the Court's eyes in hopes of an absurd, astronomical payday. Plaintiff's abuse of the legal process should not be tolerated.

Moreover, and even if the FCC's regulations could be applied here, Plaintiff ignores that the definition of "telephone solicitation" means only messages sent for the purpose of "encouraging

the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). Messages that do not encourage the *purchase* or *rental* of, or *investment* in, property, goods, or services are *not* solicitations and thus do not violate the TCPA. The messages that Plaintiff allegedly received were not solicitations, but rather a *continuation* of enrollment messages that Circle K sends *only after* a customer voluntarily and willingly provides his or her phone number and consents to receive text messages during a transaction at Circle K.

Indeed, Circle K's double opt-in messages are intended to provide an *additional* second layer verification to confirm the intent of customers who had already provided their express consent to "subscribe and receive special offers, updates, and more." Compl. ¶ 27. As clearly demonstrated by the messages, these "opt in" confirmation messages do not offer the purchase or rental of, or investment in, property, goods, or services. *See, e.g.*, *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257 (N.D. Cal. 2018) (granting summary judgment to defendant and concluding that defendant's messages were neither advertising nor telemarketing where the messages demonstrated that their purpose was to facilitate and complete an existing transaction); *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018) (granting motion to dismiss on the basis that plaintiff *failed to allege* that "initial marketing text message," which referred recipient to webpage consisting of terms and conditions required for participation in businesses' mobile marketing program, constituted telemarketing).

That is apparent by the contrast between the double opt-in message identified in Paragraph 27 of the Complaint ("Reply YES to subscribe") and the post-confirmation messages that contain actual advertisements, identified in Paragraph 28 of the Complaint ("You save 25c/gal on your first 5 fill-ups"). These latter messages were sent, as Plaintiff admits, only after he replied "YES" on June 10 and August 12, 2025.

Plaintiff's TCPA claims should, accordingly, be dismissed for the same reasons articulated in *Rotberg* and *An Phan*. And Plaintiff's Arizona law claims fail for similar reasons, and should be dismissed as well.

DEFENDANT'S MOTION TO DISMISS

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, the complaint must therefore contain more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Rather, it must contain specific factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.    ARGUMENT

### A.    The Court Should Dismiss the TCPA Claims Because the TCPA Does Not Apply to Text Messages

Plaintiff alleges four claims for relief under the TCPA. The first claim arises under 47 U.S.C. § 227(b) and its prohibition against using an ATDS to "make any call . . . using an [ATDS] or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A); *see also* Compl. ¶ 68 (first claim for relief citing 47 U.S.C. § 227(b)(1)(A)(iii)). The second, third, and fourth claims for relief arise under 47 U.S.C. § 227(c) and the subsequent federal regulations which permit a private individual the right to bring suit but only if they have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). But Plaintiff does not allege he received any "telephone call" at all. While the FCC has attempted, post-hoc, to define "call" to include text messages, the FCC cannot rewrite the plain terms of the statute that Congress passed.

As stated by the court in *Stockdale*, "[t]he TCPA does not define 'telephone call'" and "recent Supreme Court precedent dictates that th[e] Court must independently—and without deference to an agency interpretation—determine the statute's meaning." 2026 WL 591842 at *2 (citing *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025)

("District courts are not bound by the [agency's] interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation").)  The common meaning of "telephone call" means the act of calling on the telephone using "an instrument for reproducing sounds at a distance."  *Id.* at *3.  Indeed, that the FCC believed they needed to expressly define "call" to include "message" underscores the common-sense understanding of the terms as distinct. *See also Telephone Call*, WIKIPEDIA (last visited March 12, 2026), available at https://en.wikipedia.org/wiki/Telephone_call (describing an "audio communication").   Where language is this clear, "the Court's analysis stops."  *Stockdale*, 2026 WL 591842 at *4 (citing *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)).

Defendant recognizes that certain courts have held otherwise, but notes, as in *Stockdale*, that cases finding "calls" include "text messages" do so upon reliance on definitions that post-date the passage of the TCPA.  *See Stockdale*, 2026 WL 591842 at *3 n.5 (distinguishing cases that relied on definitions from 2002 and 2024).  Indeed, and as noted in *Mujahid v. Newity, LLC*, the first text message was not even sent until 1992—and thus could not have even been contemplated as falling within the definition of "telephone call."  No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (citing a 2002 definition in order to find "telephone call" includes "text messages").

That is why courts applying statutory interpretation of the terms as they were understood when the TCPA was passed, and thus against its actual backdrop, conclude that the plain language of the statute applies only to phone calls.  *See Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899-900 (C.D. Ill. 2025).

**B.      Plaintiff's TCPA Claims, even if The TCPA Applied to Text Messages, Fail to State a Claim**

*1.      Plaintiff Does Not, and Cannot, Plausibly Plead the Receipt of "Telephone Solicitations"*

The TCPA prohibits only those calls sent either without the person's consent or an established business relationship—i.e., its prohibition concerns *unsolicited* calls. *See* 47 U.S.C. § 227(a)(4) (defining a "telephone solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization"); *see also* 47 C.F.R. § 64.1200(f)(15) (same).   By the statute's plain terms, accordingly, messages sent with consent or pursuant to an established business relationship do not violate the TCPA.

Plaintiff claims that he was first sent a message on September 1, 2023, which he contends did not contain an unsubscribe instruction, stating "Circle K: Finish registering for Inner Circle to unlock your member benefits: circlek.com/inner-circle. Txt HELP 4 Info.  Msg&Data rates may apply."  Compl. ¶ 26.  But that message was sent only after Plaintiff visited Circle K's store and chose to begin the process to enroll in Circle K's "Inner Circle" rewards program.  Enrollment for Circle K's Inner Circle program could, as shown by Circle K's website on August 30, 2023, be accomplished "at participating Circle K stores" by "scan[ning] the QR code on signage using your smartphone to download the Circle K app," by "[e]nter[ing] your member ID at the fuel pump," or by "[e]ntering your member ID" "at checkout."  **Exhibit A** (Wayback Capture, August 30, 2023). Enrollment could also be accomplished online.[1]

---

[1] The Court may take judicial notice of Circle K's website.  *See Poll v. Stryker Sustainability Sols., Inc.*, No. CIV 13-440-TUC-CKJ, 2014 WL 199150, at *2 (D. Ariz. Jan. 17, 2014) (holding that judicial notice of websites is permitted when the "authenticity of a website or the accuracy of the information on the website is not disputed"); *see also Barnes v. Marriott Hotel Servs.*, Case No. 15-cv-01409-HRL, 2017 WL 635474 (N.D. Cal. Feb. 16, 2017) (taking judicial notice of several pages of Marriott's website describing the accessibility features of the Hotel).

Tellingly, Plaintiff visited Circle K store number 2703746 at 12201 N. Cave Creek Road in Phoenix, Arizona, at 1:03 P.M. on Friday, September 1, 2023. Circle K has records for every transaction by Plaintiff, demonstrating his transaction at 1:03:22 P.M. (showing as 14:03:22 (i.e., 2:03:22 P.M.) due to Arizona's lack of recognition of daylight savings time). **Exhibit B** (Declaration of Carly Lee, Exhibit 1 (D'Agostino Transaction Report) at 45 (screenshot here)).

| | | | | | | |
|---|---|---|---|---|---|---|
| 2023-09-01 20:03:22 | 2023-09-01 14:03:22 | 2023-09-01 | 2023-09-01 | 20 | 14 | 3923 2703746 |
| 2023-09-01 20:03:22 | 2023-09-01 14:03:22 | 2023-09-01 | 2023-09-01 | 20 | 14 | 3923 2703746 |
| 2023-09-01 20:03:22 | 2023-09-01 14:03:22 | 2023-09-01 | 2023-09-01 | 20 | 14 | 3923 2703746 |
| 2023-09-01 20:03:22 | 2023-09-01 14:03:22 | 2023-09-01 | 2023-09-01 | 20 | 14 | 3923 2703746 |
| 2023-09-01 20:03:22 | 2023-09-01 14:03:22 | 2023-09-01 | 2023-09-01 | 20 | 14 | 3923 2703746 |

Circle K's transaction records show that he purchased a Polar Pop ($1.19), Pringles ($4.19), and one pack of Marlboro Special Select Black 100s cigarettes ($14.92).

Accordingly, when his Complaint alleges that Plaintiff received one message on September 1, 2023, at 1:03 P.M., *it was because he entered his phone number during a purchase*. And as Circle K has stated in every prior lawsuit brought against it before, it sends messages only after a number is entered into Circle K's system expressly for the purpose of consenting to receive messages. *See Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1101 (D. Ariz. 2024) ("Circle K utilizes opt-in confirmation messages, which are sent only after a customer has already provided their prior express consent to receive messages from Circle K.") The message was not unsolicited but was made only after completion of Plaintiff's purchase, who thereby not only consented to the message but also established a business relationship with Circle K, precluding liability under the TPCA. *See* 47 U.S.C. § 227(a)(4) (stating that the term "telephone solicitation" does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization").

The subsequent messages that Plaintiff alleges he received cannot form the basis of a TCPA violation for the same reason. Each message was sent to Plaintiff only after he entered his number during a purchase to consent to receive Circle K messages, and even then, each message was a double opt-in to confirm his enrollment, except for the two, distinct, "immediate profit

solicitations" Plaintiff received after responding "yes" and thereby consenting to receive *marketing* messages.

Moreover, these double opt-in messages do not "encourage[e] the purchase or rental of, or investment in, property, goods, or services." And messages that do not encourage "the purchase or rental of, or investment in, property, goods, or services" are not telephone solicitations. 47 C.F.R. § 64.1200(f)(15). On this issue, the case of *Rotberg v. Jos. A. Bank Clothiers, Inc.* is directly on point. *See* 345 F. Supp. 3d 466 (S.D.N.Y. 2018). In that case, the court granted the defendant's motion to dismiss on the basis that the plaintiff failed to allege that "initial marketing text message," which referred recipient to defendant's webpage consisting of terms and conditions required for participation in defendant's mobile marketing program, constituted telemarketing. *Id.* at 478–79. The court concluded that defendant did not engage in telemarketing by sending messages that constituted a contract seeking the recipient's consent to receive marketing materials in subsequent messages. *Id.* at 479. Accordingly, the court dismissed the plaintiff's complaint. *Id.* at 481–82.

So too the messages here are clearly *confirmation/continuation of enrollment* messages that follow from the plaintiff's provision of her phone number to Circle K, consent to receive messages, and pre-existing relationship. *See An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1265 (N.D. Cal. 2018) (granting summary judgment to defendant, finding that the text messages did not qualify as advertising or telemarketing because they were sent as part of an ongoing business transaction); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 WL 7454260, at *3-7 (N.D. Cal. Nov. 24, 2015) (dismissing TCPA claim where message was sent minutes after plaintiff gave the Five Stars cashier his telephone number and the purpose of the message was to enable the plaintiff to complete his registration process that he had intentionally initiated minutes before); *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *6-9 (W.D. Wash. Feb. 27, 2014) (granting defendant's motion for judgment on the pleadings because the messages were sent to complete the plaintiff's registration process).

For these reasons, Plaintiff's Counts I, II, III, and IV should be dismissed.

**2.      The "Immediate Profit Solicitations" Were Sent Only After Plaintiff Responded "Yes"**

Plaintiff complains about two messages that were sent after he concedes, in his Complaint, that he responded "Yes" to subscribe. Compl. ¶ 28. Solicited/consented messages do not violate the TCPA, and thus Plaintiff cannot maintain a claim for these (the only) marketing messages he received. *See* 47 U.S.C. § 227(a)(4) (stating that a "telephone solicitation" does not include a message sent to a person with that person's prior express invitation or permission); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("prior express consent is a complete defense to [a] TCPA claim").

For this reason, part of Plaintiff's Counts I and II should be dismissed.

**3.      There is No Merit to Plaintiff's Claim that He Received 146 "Unsolicited" Messages Before 8 A.M.**

Section 227 does <u>not</u> provide a restriction against messages sent before 8 A.M. or after 9 P.M. Instead, it provides only for a private right of action for alleged violations of regulations prescribed under Section 227(c), concerning rulemaking proceedings protecting residential telephone subscribers' privacy rights against "telephone solicitations to which they object."

Section 64.1200(c)(1) provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)." "Telephone solicitation" is a defined term which means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, ***but such term does not include a call or message: (i) [t]o any person with that person's prior express invitation or permission; [or] (ii) [t]o any person with whom the caller has an established business relationship.***" 47 C.F.R. § 64.1200(f)(15) (emphasis added). When a statute or regulation "includes an explicit definition, [the court] must follow that definition." *Van Buren v. United States*, 593 U.S. 374, 387 (2021) (internal quotations omitted). Accordingly, *if* a message is sent to a person who has consented to such messages or with whom the company has an established

business relationship, then as a matter of clear statutory interpretation it cannot be a "telephone solicitation" sent in violation of the TCPA.

Plaintiff complains that he was sent 146 messages during prohibited hours.  Compl. ¶ 31. But again, ***Plaintiff received those messages only after entering his number at a Circle K store each time.***  (The second column represents the "transaction_datetime_local" though it does not account for Arizona's lack of recognition of daylight savings time, and so summer months are one-hour different (e.g., the May and June 2025 purchases reflect a one-hour time difference, while the December 2025 and February 2026 purchases reflect the correct local time).)

- Monday, May 12, 2025, at 5:37 A.M.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2025-05-12 12:37:51 | 2025-05-12 06:37:51 | 2025-05-12 | 2025-05-12 | 12 | 6 | 3644 | 2701855 |
| 2025-05-12 12:37:51 | 2025-05-12 06:37:51 | 2025-05-12 | 2025-05-12 | 12 | 6 | 3644 | 2701855 |
| 2025-05-12 12:37:51 | 2025-05-12 06:37:51 | 2025-05-12 | 2025-05-12 | 12 | 6 | 3644 | 2701855 |
| 2025-05-12 12:37:51 | 2025-05-12 06:37:51 | 2025-05-12 | 2025-05-12 | 12 | 6 | 3644 | 2701855 |

- Monday, June 23, 2025, at 4:11 A.M.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |
| 2025-06-23 11:11:29 | 2025-06-23 05:11:29 | 2025-06-23 | 2025-06-23 | 11 | 5 | 5037 | 2708692 |

- Monday, June 30, 2025, at 5:38 A.M.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2025-06-30 12:38:17 | 2025-06-30 06:38:17 | 2025-06-30 | 2025-06-30 | 12 | 6 | 5337 | 2709523 |
| 2025-06-30 12:38:17 | 2025-06-30 06:38:17 | 2025-06-30 | 2025-06-30 | 12 | 6 | 5337 | 2709523 |
| 2025-06-30 12:38:17 | 2025-06-30 06:38:17 | 2025-06-30 | 2025-06-30 | 12 | 6 | 5337 | 2709523 |

- Monday, December 22, 2025, at 5:04 A.M.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2025-12-22 12:04:53 | 2025-12-22 05:04:53 | 2025-12-22 | 2025-12-22 | 12 | 5 | 5037 | 2708692 |
| 2025-12-22 12:04:53 | 2025-12-22 05:04:53 | 2025-12-22 | 2025-12-22 | 12 | 5 | 5037 | 2708692 |
| 2025-12-22 12:04:53 | 2025-12-22 05:04:53 | 2025-12-22 | 2025-12-22 | 12 | 5 | 5037 | 2708692 |

- Monday, February 2, 2026, at 4:53 A.M.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |
| 2026-02-02 11:53:38 | 2026-02-02 04:53:38 | 2026-02-02 | 2026-02-02 | 11 | 4 | 5037 | 2708692 |

- Thursday, February 5, 2026, at 5:16 A.M.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2026-02-05 12:16:38 | 2026-02-05 05:16:38 | 2026-02-05 | 2026-02-05 | 12 | 5 | 5337 | 2709523 |
| 2026-02-05 12:16:38 | 2026-02-05 05:16:38 | 2026-02-05 | 2026-02-05 | 12 | 5 | 5337 | 2709523 |
| 2026-02-05 12:16:38 | 2026-02-05 05:16:38 | 2026-02-05 | 2026-02-05 | 12 | 5 | 5337 | 2709523 |

DEFENDANT'S MOTION TO DISMISS

Indeed, Circle K's records show that Plaintiff continued making purchases, including on February 19, 2026, at Circle K store 2709523 (9418 N. 7th Street, Phoenix, Arizona) at 5:17 A.M. And Circle K's security camera shows Plaintiff during that transaction, at 5:17:47 A.M. (top left).



It is incredulous, and simply implausible, where Plaintiff received double opt-in messages sent immediately upon his entry of his phone number into Circle K's checkout system, for Plaintiff to claim that he received unsolicited messages that caused him physiological disruption and sleep deprivation **when he was awake and shopping at Circle K**.

For this reason, Plaintiff's Count III should be dismissed.

### 5.    *Plaintiff's Internal Do-Not-Call Claim Should be Dismissed*

Plaintiff alleges that he received 299 messages after responding "STOP" or "STOP2END," Compl. ¶ 97, and thus Circle K did not honor his request.  Plaintiff's claim lacks merit for two reasons.  First, when he responded "STOP" on June 10, 2025, his complaint demonstrates that he received a response informing him that he had been unsubscribed.  ECF No. 1-1 at pg. 15. Nevertheless, he continued to shop at Circle K the very next day and ***re-entered his number to re-***

| | | | | | | |
|---|---|---|---|---|---|---|
| 2025-06-11 12:28:00 | 2025-06-11 06:28:00 | 2025-06-11 | 2025-06-11 | 12 | 6 | 5337 2709523 |
| 2025-06-11 12:28:00 | 2025-06-11 06:28:00 | 2025-06-11 | 2025-06-11 | 12 | 6 | 5337 2709523 |
| 2025-06-11 12:28:00 | 2025-06-11 06:28:00 | 2025-06-11 | 2025-06-11 | 12 | 6 | 5337 2709523 |

*subscribe*. Accordingly, when he received a message at 5:28 A.M. the next day, that was because he made a purchase at Circle K.

By re-entering his number, Plaintiff again gave his consent to receive the message. And he knew he was doing so. Circle K's in-store Inner Circle opt-in language is as follows: "By entering your number, you are consenting to receive marketing messages from Circle K." Stated simply, Plaintiff continued to receive messages only because he kept entering his number to receive messages. He cannot complain that, after each time re-entering his number, he received another message. And the attempt to manufacture a case here is apparent from Plaintiff's deceptive attempt to respond "STOP2END" rather than "STOP" to end the messages, as he knew needed to be done.

Because Plaintiff re-subscribed each time, he gave his consent to receipt of the message, and accordingly Plaintiff's Count IV should be dismissed.

## C. Plaintiff's Attempt to Manufacture an Arizona Law Claim Fails

### 1. *Plaintiff's Arizona Consumer Fraud Claim Should be Dismissed*

The Arizona Consumer Fraud Act ("CFA") makes it unlawful for "any person" to use or employ "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A). "Merchandise" is defined to mean "objects, wares, goods, commodities, intangibles, real estate or services." A.R.S. § 44-1521(5).

"The three elements of a statutory fraud claim include [1] a false promise or misrepresentation [2] made in connection with the sale of merchandise and [3] the Plaintiffs' resulting and proximate injury." *Loomis v. U.S. Bank Hom Mortg.*, 912 F. Supp. 2d 848, 856 (D. Ariz. 2012).

Plaintiff claims that Circle K violated the CFA by "transmitting four written confirmations on June 10, 2025; August 12, 2025; January 9, 2026; and January 10; 2026, stating: 'Circle K: You've been unsubscribed from all texts on 25050 & will no longer receive text msgs.'" Compl. ¶ 103. But Plaintiff does not identify any "sale or advertisement of any merchandise" with respect

---

DEFENDANT'S MOTION TO DISMISS

to these opt-out confirmation messages. Plaintiff identifies the purported "deceptive act," "material misrepresentation," and "damages," but again, nothing about what sale or advertisement of merchandise is implicated.

For this reason, Plaintiff's Count V should be dismissed.

### 2.   *Plaintiff's Claim for Intrusion Upon Seclusion Should be Dismissed*

Plaintiff does not cite any basis for his claim for "intrusion upon seclusion" in Arizona law. The only citation Plaintiff provides is to the apparent case of *Navient Solutions, LLC v. Law Offices of Jeffrey Lohman*, 2020 WL 1864871, at *12 (D. Ariz. 2020) (holding that 360 automated calls constituted a "substantial burden to existence."). Compl. ¶ 111. But Circle K is not aware of any such case existing. A search of "2020 WL 1864871" in Westlaw returns an Ohio Public Utilities Commission finding and order *In the Matter of the Proper Procedures and Process for the Commission's Operations and Proceedings During the Declared State of Emergency and Related Matters*. The only case titled *Navient Solutions, LLC v. The Law Offices of Jeffrey Lohman* that Circle K is aware of is a matter in the Eastern District of Virginia, in which Navient Solutions sued the Law Offices of Jeffrey Lohman for manufacturing TCPA claims—ironically, as Plaintiff here has done.

Because Plaintiff has not provided any basis in Arizona law for the purported "intrusion of seclusion" claim, it must be dismissed. And even if such a claim could be maintained, there is no basis where Plaintiff ***repeatedly shopped at Circle K and entered his number for the purpose of triggering the double opt-in message about which he now complains***. Just as a matter of common sense, a plaintiff cannot complain about a purported intrusion that the plaintiff has welcomed, and in fact, initiated.

For this reason, Plaintiff's Count VI should be dismissed.

### 3.   *There is No Basis for Plaintiff's Implied-In-Fact Contract Claim or Promissory Estoppel*

Plaintiff claims that Circle K's messages notifying him he could respond "Stop" to end and "Stop" "2" "end" constituted unilateral offers, which he accepted by responding "STOP2END." Compl. ¶¶ 117-118. Plaintiff claims that his consideration for the exchange was the time it took

him to message his response, "STOP2END." *Id.* ¶ 119. And he claims Circle K breached its unilateral offer and Plaintiff's acceptance by continuing to message him after he sent "STOP2END." *Id.* ¶ 120. Plaintiff alternatively alleges that Circle K's instruction constituted a promise, upon which Plaintiff relied. *Id.* ¶¶121-122.

There is no merit to either claim. An implied-in-fact contract requires circumstances permitting a reasonable person to conclude that two parties intended to create contractual obligations. *See Demasse v. ITT Corp.*, 194 Ariz. 500, 505 ¶ 15 (1999) (employment context); *Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 112 Ariz. 392 (1975) (construction context). No reasonable person could ever conclude that opting out of a company's messaging would "create contractual obligations." Nor has Circle K found any caselaw suggesting that opting out of a messaging program constitutes the creation of an implied-in-fact contract or unilateral offer. Neither has Circle K found any caselaw stating that an opt-out can operate as a "promise" for purposes of maintaining a promissory estoppel claim.

But even if they could, Plaintiff's repeated re-entry of his phone number defeats any claim that Circle K violated any such promise of contract right of Plaintiff not to receive further messages, for the same reasons stated above.

For these reasons, Plaintiff's Count VII should be dismissed.

## V.   CONCLUSION

For these reasons, the Court should dismiss Plaintiff's Complaint in its entirety.

## <u>NOTICE OF CERTIFICATION OF CONFERRAL</u>

Undersigned counsel for Circle K certify that they have conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised in this motion and can state that the pleading is not curable by amendment.

DATED:  March 16, 2026                GREENBERG TRAURIG, LLP


                                      By  /s/ Matthew P. Hoxsie
                                          Tyler R. Andrews (*Pro Hac Vice forthcoming*)
                                          Matthew P. Hoxsie
                                          Attorneys for Defendant
                                          CIRCLE K STORES, INC.

DEFENDANT'S MOTION TO DISMISS