**GREENBERG TRAURIG, LLP**

Tyler R. Andrews (SBN 250686) *Pro Hac Vice forthcoming*
andrewst@gtlaw.com
18565 Jamboree Road, Suite 500
Irvine, CA  92612-4410
Telephone: (949) 732-6500
Facsimile: (949) 732-6501

Matthew P. Hoxsie (SBN 034952)
hoxsiem@gtlaw.com
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100

Attorneys for Defendant

CIRCLE K STORES INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Circle K Stores Inc. and Mobivity Holdings Corp.,<br><br>Defendants. | Case No. 2:26-cv-01225-JAT<br><br>[Assigned to Hon. James A. Tielborg]<br><br>**REPLY IN SUPPORT OF DEFENDANT CIRCLE K STORES INC.'S MOTION TO DISMISS COMPLAINT**<br><br>**(Oral Argument Requested)** |

**INTRODUCTION[1]**

As demonstrated in Defendant Circle K's Motion to Dismiss ("Motion," ECF No. 11), Circle K cannot be held liable for Plaintiff's TCPA allegations because Circle K does not send telemarketing text messages to anyone – let alone Plaintiff – without the prior express consent of its customers.  Indeed, Circle K utilizes an industry-best-practice of requiring a "double-opt-in" process for each customer before a single telemarketing message is sent via text.

Plaintiff's Opposition to Defendant's Motion to Dismiss (the "Opposition") fails to identify a reason why the Court should not dismiss the Complaint.  As discussed in the Motion and herein, the alleged text messages at issue here do not fall within the purview of the TCPA because (i) they were not initiated or made using an artificial or prerecorded *voice*, even under the recent Ninth Circuit caselaw cited by Plaintiff; (ii) Plaintiff has not plausibly pled that an ATDS was used by Circle K; and (iii) the text messages are not "telephone solicitations" as a matter of law.  Indeed, Plaintiff's own allegations sufficiently demonstrate these facts, including in particular that Circle K sends these opt-in messages *only after - and as a consequence of - entry of a specific phone number into its systems during a transaction*.  Plaintiff's attempt to manufacture a massive windfall for himself by misinterpreting the relevant legal standards and exploiting Circle K's TCPA-compliant SMS processes should not be permitted in this Court.  The Motion should be granted.

**I.      COUNTS I AND IV MUST BE DISMISSED BECAUSE THERE WAS NO "VOICE" CALL**

Plaintiff's Opposition cites to the recent Ninth Circuit decision in *Howard v. Republican National Committee* to argue that, even post *McLaughlin*, text messages still qualify as "calls." Plaintiff's reliance on that case is misplaced.

---

[1] In its recent Order (ECF No. 12), the Court required Circle K to address FRCP 12(d) and discuss the exhibits attached to the Motion within this Reply.  As discussed herein, the Court need not consider Defendant's exhibits to address the primary legal issues presented in the Motion – namely, that the alleged texts at issue are outside the purview of the TCPA as a matter of law.  And while the exhibits are properly included for consideration as judicially noticeable (Exhibit A), and as context for the undisputed facts surrounding Defendant's SMS-enrollment process (Exhibit B), they are not necessary to grant the Motion under Rule 12(b), and as such do not require a Rule 12(d) conversion.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

First, the Ninth Circuit's decision in *Howard* held that artificial and prerecorded calls (even interpreted to mean messages) must be made or initiated *using an artificial or prerecorded "voice*." *Howard v. R.N.C.*, 164 F.4th 1119, 1125-26 (9th Cir. 2026).  And there are no allegations that any *voice* was used to make or initiate the text messages here.  *Id.* at 1128 ("For the foregoing reasons, we conclude that the relevant language in § 227(b)(1)(A)(iii) and § 227(b)(1)(B) only reaches the of prerecorded voices in the manner in which a call is begun.  Because the text message at issue here was made and initiated without the playing of prerecorded voice, it did not violate these provisions.  We therefore affirm the district court's order dismissing the complaint for failure to state a claim on which relief can be granted.").

Nor is Plaintiff's bald allegation "that an ATDS" was used, Compl. ¶ 23, sufficient to allege the use of an automatic telephone dialing system, to save Plaintiff's Section 227(b) claim (which covers *either* calls made using an ATDS *or* an artificial or prerecorded voice).  As explained in the United States Supreme Court case *Facebook, Inc. v. Duguid*, an ATDS "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential generator."  592 U.S. 395, 399 (2021).  And Plaintiff has set forth *zero* allegations suggesting that a "random or sequential generator" was used by Circle K here.  Indeed, Plaintiff's Complaint references separate lawsuits against Circle K, all of which demonstrate that Circle K only sends messages to numbers that were voluntarily entered by a customer—and thus were clearly not "randomly or sequentially" generated.  *See, e.g.*, Compl. ¶ 60.  Indeed, Plaintiff himself alleges that he spoke to a Circle K representative who informed him that Circle K "captures phone numbers when a consumer 'punch[es] in [their] phone number anywhere' at a store."  Compl. ¶ 52.  Plaintiff's own allegations undermine any potential claim that an ATDS was used here.

Because Plaintiff has not alleged that either an ATDS or an artificial or prerecorded voice was used, Plaintiff's Section 227(b) claim (i.e., Count I) must be dismissed – even assuming text messages could potentially qualify as "calls" under the TCPA.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

And Plaintiff's Count IV claim fails for the same reason. Plaintiff's Count IV claims a violation of internal do-not-call procedures established in 47 C.F.R. § 64.1200(d). But that regulation only prohibits persons or entities from "initiat[ing] any artificial or prerecorded-voice telephone call." 47 C.F.R. § 64.1200(d).[2] And again, here there are no allegations that a "voice" call was made at all. Accordingly, Plaintiff's Count IV must be dismissed, even if text messages could be considered "calls."

## II.    COUNTS II AND III SHOULD BE DISMISSED BECAUSE THERE WAS NO VOICE MESSAGE

Plaintiff's citation to *Howard*, even if "call" were interpreted to mean "text messages," forecloses his remaining claims because that case makes clear the purpose of the statute (both for Section 227(b) and (c) claims) is to prevent *voice* calls, use of an ATDS, or unsolicited messages sent by facsimile machine.

Indeed, when the FCC first passed regulations pursuant to 47 U.S.C. § 227(c), it repeated that the TCPA's purpose was to preclude three categories of calls: "the TCPA imposes restrictions on the use of [i] automatic telephone dialing systems, [ii] the use of artificial or prerecorded voice, and [iii] on the use of telephone facsimile machines to send unsolicited advertisements." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (1992). Indeed, even as to unsolicited advertisements sent from a telephone facsimile machine—***and there are no allegations concerning fax machines here***—the FCC stated that "[t]he TCPA requires that the Commission consider several methods to accommodate telephone subscribers who do not wish to *receive unsolicited advertisements, including live voice solicitations [as compared to artificial or prerecorded voice solicitations]*." *Id.* at 8754 (emphasis

---

[2] To the extent Section 64.1200(d) could be argued to also apply to "any call for telemarketing purpose," and thus any "text message for telemarketing purposes," such a reading would render the "voice" element superfluous and ineffectual. And the Court should not interpret a statute to render a portion ineffective. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basis interpretive canons" is that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

added).  The FCC rightfully recognized at the time that its powers were limited to voice calls (either live or artificial or prerecorded).

Even in 2003 when the national do-not-call registry was created, the FCC again repeated that "[t]he statute restricts the use of [i] automatic telephone dialing systems, [ii] artificial and prerecorded messages [i.e. voice messages], and [iii] telephone facsimile machines to send unsolicited advertisements."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14018-19 (2003) (stating "[t]he TCPA requires the Commission to prescribe regulations to implement the statute's restrictions on the use of autodialers, artificial or prerecorded messages and unsolicited facsimile advertisements").

Plaintiff's attempt to argue that the FCC somehow broadened the TCPA through implementation of its regulations must be rejected.  *See, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) (requiring that regulations must not exceed the statutory authority).  Indeed, the power of the agency "is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute."  *Manhattan Gen. Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134 (1936); *see also Federal Communications Comm'n v. Am. Broadcasting Co.*, 347 U.S. 284, 290 (1954) (stating that the agency "cannot employ the statute to make [legal programs illegal] by agency action").[3]

Further still, the FCC did not even attempt to define the national do-not-call restrictions to apply to text messages until 2024—more than two decades after the national do-not-call restrictions were established and more than three decades after the TCPA was first enacted.  *See Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 FR 5098-01, 5099, 2024 WL 283571 (Jan. 26, 2024) ("6. National Do-Not-Call Registry.  The Commission adopts the proposal to codify the National DNC registry's existing protections to text messages.").

---

[3] Justice O'Connor's recitation of the holding in *Federal Communications Commission* was that an "agency cannot make illegal by regulation what is legal under the statute."  *See Guardians Ass'n v. Civil Service Comm'n of City of New York*, 463 U.S. 582, 614, n.2 (O'Connor, J., concurring).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

For these reasons, the regulations provided in Section 227(c) and 47 C.F.R. § 64.1200(c) must be construed in accordance with the prohibitions established in 47 U.S.C. § 227 writ large, which <u>do not apply to non-voice calls</u>.  Accordingly, Plaintiff's Counts I through IV must all be dismissed as a matter of law.

## III.    PLAINTIFF'S RESPONSE MAKES CLEAR THE MESSAGES WERE NOT UNSOLICITED TELEPHONE SOLICITATIONS

First and foremost, the Court has authority to consider Defendant's materials attached to the motion to dismiss without converting it to a motion for summary judgment under Rule 12(d), though it need not do so to resolve the motion to dismiss here.  Defendant attached (A) its website as preserved on the Wayback Machine from August 2023 and (B) Plaintiff's purchase records.

Exhibit A is a website of which this Court can take judicial notice.  *See Morris v. Pompeo*, 706 F. Supp. 3d 1074 (D. Nev. 2020) (permitting the Court, without converting a motion to dismiss into one for summary judgment, to consider matters of public record as well as documents whose contents are alleged in the complaint and whose authenticity no party questions); *see also Spears v. Arizona Board of Regents*, 372 F. Supp. 3d 893 (D. Ariz. 2019) (permitting the Court to consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment); *A.G. by and Through N.G. v. Community Ins. Co.*, 363 F. Supp. 3d 834 (S.D. Ohio 2019) (permitting the Court to consider wilderness therapy program's website referred to in complaint alleging coverage by employee welfare benefit plan and in exhibits that plan administrator attached to motion to dismiss).  This is ***particularly true of the Wayback Machine, which courts in this district have accepted as a repository whose accuracy cannot reasonably be questioned***.  *See UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017) (collecting cases).

Exhibit A makes clear—as even Plaintiff's Complaint concedes—that Defendant messages its customers (i.e., those with which it has an established business relationship) only *after* those customers enter their phone number during a purchase or transaction and consent to receive messages.

As for Exhibit B, Plaintiff does not dispute the accuracy of Defendant's records matching the text messages to purchases at Circle K.  Instead, Plaintiff solely contends that someone else entered his number—implausibly entering his own very specific number during hundreds of transactions with Circle K, to which Plaintiff repeatedly responded "STOP2END" instead of "STOP" to end the resulting messages (which Plaintiff *admittedly knew* was the "universal command" to do so).  Exhibit B makes clear that Plaintiff has manufactured this case and renders any claim that the messages he allegedly received were *unsolicited* entirely implausible.

Both attachments, as well as Plaintiff's own allegations, also make it clearly implausible that the messages were "telephone solicitations."  While Plaintiff relies on the Court's rhetorical (and non-binding) statement in the *Abboud* matter that "it is difficult to imagine why Defendant would repeatedly encourage [Ms. Abboud] to sign up for offers other than to encourage her to make future purchases of goods at Defendant's stores based on those offers," Response at 7, that rhetoric conflates what would be true for every business action (i.e., every action by a business arguably serves an implicit purpose to encourage the customer), with the simple fact that the purpose of the specific communications at issue here is a *continuation* of an enrollment process and thus not marketing as it pertains to the TCPA.  Indeed, every other Ninth Circuit court to consider the matter has determined that these *continuation* messages are not "telephone solicitations."  *See An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1265 (N.D. Cal. 2018) (granting summary judgment to defendant, finding that the text messages did not qualify as advertising or telemarketing because they were sent as part of an ongoing business transaction); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 WL 7454260, at *3-7 (N.D. Cal. Nov. 24, 2015) (dismissing TCPA claim where message was sent minutes after plaintiff gave the Five Stars cashier his telephone number and the purpose of the message was to enable the plaintiff to complete his registration process that he had intentionally initiated minutes before); *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *6-9 (W.D. Wash. Feb. 27, 2014) (granting defendant's motion for judgment on the pleadings because the messages were sent to complete the plaintiff's registration process).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

And Plaintiff does not cite any other cases in his favor in support of his Opposition. Stated simply, a *continuation-of-enrollment* message is not a telephone solicitation under the TCPA, either by its strict language or even a broader "purpose." As demonstrated above, even the FCC understood that the TCPA's restrictions were solely for "unsolicited" advertisements. For these reasons, the TCPA claims must be dismissed.

## IV. PLAINTIFF'S STATE LAW CLAIMS FAIL

### 1. Plaintiff's Arizona Consumer Fraud Claim Should be Dismissed

Plaintiff's own Complaint acknowledges that the messages at issue are sent only after a customer enters their number—in accord with the documents attached to the motion to dismiss and the caselaw upon which Plaintiff's Complaint relies. There is, accordingly, no plausible "deception" involved with Circle K's opt-in confirmation message, despite Plaintiff's prior "STOP" request to unsubscribe.

Even then, Plaintiff's Response does not sufficiently dispute that there was no "sale." Instead, Plaintiff argues that the definition of "merchandise" includes "intangibles" and "services." Even if merchandise includes intangibles and services, they still must be "sold"—i.e., a "sale of merchandise." To this end, Plaintiff conflates a free service with a later sale, *if* the customer were to confirm "YES," receive an actual discount advertisement via text message, and *then* make a purchase using that discount. Plaintiff does not complete the chain however, and cannot rely on the CFA to state a claim in the absence of a "sale of merchandise." *See Loomis v. U.S. Bank Home Mortg.*, 912 F. Supp. 2d 848, 856 (D. Ariz. 2012) (requiring as an element to state a claim that the "false" promise or misrepresentation be "made in connection with the **sale of merchandise**" (emphasis added)).

For this reason, Plaintiff's Count V should be dismissed.

### 2. Plaintiff's Claim for Intrusion Upon Seclusion Should be Dismissed

Plaintiff's Opposition relies on the case of *Godbehere v. Phoenix Newspapers, Inc.* to argue that "Arizona has explicitly recognized th[e] tort [of 'intrusion upon seclusion']." Opposition at 11 (citing 162 Ariz. 335 (1989)). But that case involved a claim for invasion of privacy for a

newspaper's disclosure of personal information. *See* 162 Ariz. at 337 (plaintiff brought claim "for libel and false light invasion of privacy"). It does not support the existence of a claim for intrusion upon *any* seclusion whatsoever. Indeed, the word "seclusion" appears just once in that case, in the Court's recitation of separate torts "under the right of privacy rubric" such as "intrusion on the plaintiff's seclusion or private affairs" and "public disclosure of embarrassing private facts," among others. *Id.* at 338. The other cases cited by Plaintiff only drive home this point. In the case of *Coates v. Sheid*, plaintiffs alleged that the defendant "had 'intentionally intruded upon the private affairs and concerns of [plaintiffs]' by accessing their personal accounts at Costco and turning account information over to law enforcement." 2010 WL 5209373, *3, ¶ 9 (Ariz. Ct. App. Dec. 14, 2010). And in the case of *Hart v. Seven Resorts Inc.*, the plaintiffs sued claiming an invasion of their privacy where their employer allegedly required the employees take drug tests. 190 Ariz. 272, 279-280 (App. 1997). They are *not* text message cases.

Because Plaintiff has not provided any basis in Arizona law for the purported "intrusion of seclusion" claim he attempts to make here, it must be dismissed. For this reason, Plaintiff's Count VI should be dismissed.

### 3. There is No Basis for Plaintiff's Implied-In-Fact Contract Claim or Promissory Estoppel

Plaintiff's final attempt to manufacture a state law claim also fails. Plaintiff cites the case of *Cornell v. Desert Financial Credit Union* to claim that an ongoing, at-will consumer-business relationship consists of the "day-to-day offer and acceptance of unilateral contracts." Opposition at 12. Not so. First, that case involved a certified question regarding *modification* of a consumer contract. 254 Ariz. 477, 479 ¶ 1 (2023). Here, Plaintiff does not allege any initial consumer contract. Second, and even then, the Court held only "that [because] on-going, at-will, consumer-business relationships consist of the day-to-day offer and acceptance of unilateral contracts; thus, businesses may effectively modify the non-negotiated, standardized terms governing these relationship if the business demonstrates" certain conditions are met. That case does not support the *creation* of a contract or the right for Plaintiff to bring such a claim here.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

As for Plaintiff's reference to a "constraint on autonomy," Opposition at 13, this too only underscores the lack of a proper contract claim here. There is no imposition or constraint imposed by a contractual relationship—full stop.

For these reasons, Plaintiff's Count VII should be dismissed.

## V.    CONCLUSION

For these reasons and the reasons stated in the Motion, the Court should dismiss Plaintiff's Complaint in its entirety.

DATED:  March 27, 2026                          GREENBERG TRAURIG, LLP


                                                By  /s/ Matthew P. Hoxsie
                                                    Tyler R. Andrews (*Pro Hac Vice forthcoming*)
                                                    Matthew P. Hoxsie
                                                    Attorneys for Defendant
                                                    CIRCLE K STORES, INC.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS