**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, | No. CV-26-01225-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Circle K Stores Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Daniel D'Agostino's *ex parte* Motion for an Emergency Temporary Restraining Order ("TRO") against Defendant Mobivity Holdings Corporation ("Mobivity"). (Doc. 19). The Court now rules.

## I.    BACKGROUND

Plaintiff filed suit on February 23, 2026 against Circle K Stores Incorporated and Mobivity (collectively, "Defendants"), alleging violations of the Telephone Consumer Protection Act ("TCPA") and Arizona state law. (Doc. 1); *see* 47 U.S.C. § 227. Plaintiff served Defendants the same day he filed his Complaint. (Docs. 9–10 (proof of service upon Defendants)).

Plaintiff alleges that between September 1, 2023 and February 5, 2026, Defendants sent Plaintiff 350 unsolicited marketing text messages to encourage him to purchase goods and services from Circle K stores. (Doc. 1 at 6 ¶¶ 23–24). He claims that "Mobivity acted as a third-party messaging service and agent of Circle K, managing and transmitting the text message marketing campaigns at issue." (Doc. 1 at 4 ¶ 13). Plaintiff's Complaint seeks

statutory damages in the amount of $1,779,000. (Doc. 1 at 27–28).

After Mobivity failed to respond to Plaintiff's Complaint, Plaintiff applied for an entry of default pursuant to Federal Rule of Civil Procedure ("Rule") 55(a).[1] (Doc. 14). The Clerk of Court entered default against Mobivity on April 1, 2026. (Doc. 18).

Plaintiff now moves this Court "on an emergency basis" to enter a "Temporary Restraining Order and Asset Preservation Order" against Mobivity. (Doc. 19 at 2). Plaintiff claims that Mobivity "consummated the sale of substantially all of its operating assets" for a combination of cash and common stock on March 26, 2026, leaving Mobivity with "$6,608,422 in cash, no operating business, no revenue, and no commercial purpose other than to hold and ultimately distribute the proceeds of that sale to its shareholders." (Doc. 19 at 2). Plaintiff alleges Mobivity's Chairman of the Board holds approximately 47.5% of Mobivity's outstanding shares. He theorizes that Mobivity—"[a] company that has sold its operating business for cash, has no operational reason to retain that cash, and whose dominant shareholder controls nearly half of the outstanding stock"—"is a company that is very likely planning a cash distribution—possibly imminently." (Doc. 19 at 2). Plaintiff's chief concern is that the cash distribution to Mobivity's shareholders will occur before this Court enters judgment in this matter, making the process of "clawing back" cash "extraordinarily difficult and uncertain." (Doc. 19 at 3).

To prevent "the dissipation of assets" to Mobivity's shareholders, officers, and directors before Plaintiff can collect his anticipated judgment, he asks the Court to enjoin Mobivity from:

> (a) making any dividend, distribution, or other payment of cash or liquid assets to any shareholder, officer, director, or affiliated entity, including but not limited to Thomas B. Akin, Talkot Fund L.P., Ballyshannon Partners L.P., Ballyshannon Family Partnership L.P., Odyssey Capital Group LP, Joseph H. Moglia, Moglia Family Foundation, Moglia Capital LLC, Moglia Trust 2, Dennis Becker, Philip Guarascio, The Schneider Family Trust, Douglas Schneider, and Robert Weeks;
>
> (b) transferring, conveying, encumbering, pledging, assigning, or otherwise disposing of any cash, bank accounts, securities, or other assets with a value

---

[1] Plaintiff states that his "Motion for Default Judgment is filed concurrently herewith" his TRO Motion. (Doc. 19 at 2). Plaintiff filed his Motion for Default Judgment (Doc. 20) four days after his TRO Motion, which the Court will address in a separate Order.

exceeding $10,000, other than in the ordinary course of satisfying existing, documented liabilities as they come due in the normal course of business, which liabilities shall be identified to Plaintiff and the Court as set forth below;

(c) taking any action to dissolve, wind up, or otherwise terminate the corporate existence of Mobivity Holdings Corp. pending satisfaction of the judgment entered in this action;

(d) transferring, pledging, encumbering, or otherwise impairing the 6,328,991 Class B common shares of Reward Holdings, ULC currently held by Mobivity Holdings Corp. as partial consideration under the Asset Purchase Agreement dated January 16, 2026; and

(e) taking any action designed or reasonably likely to render Mobivity Holdings Corp. unable to satisfy the judgment sought in this action.

(Doc. 19 at 13).

## II.    LEGAL STANDARD

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). "The standard for obtaining a TRO and a [preliminary injunction] is identical." *Id.* A plaintiff seeking a TRO must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of immediate relief, (3) the balance of equities tips in his favor, and (4) a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the "sliding scale" approach, courts balance the *Winter* elements "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit Court of Appeals applies a version of the sliding scale approach—known as the "serious questions" test—under which a preliminary injunction may issue if there are serious questions going to the merits and a balance of hardships that tip sharply in the plaintiff's favor. *Id.* at 1131, 1134–35. This approach allows courts to balance the first and third factors of the *Winter*'s test, but all four factors must still be satisfied to support the grant of injunctive relief. *Id.* at 1134–35. The movant bears the burden of proof on each element

- 3 -

of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Further, an injunction binds only those who receive actual notice "by personal service or otherwise." Fed. R. Civ. P. 65(a)(1). Accordingly, a party seeking a TRO without written or oral notice to the adverse party is permissible only if certain conditions are met. *Ruditser v. Dukina*, CV-22-02142-PHX-DLR, 2023 WL 2140480, at *2 (D. Ariz. Feb. 21, 2023) ("A party seeking an *ex parte* TRO also must comply with Federal Rule of Civil Procedure 65(b)(1)."). An *ex parte* TRO movant must (1) show that immediate and irreparable harm will occur before the adverse party can be heard in opposition, and (2) certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The U.S. Supreme Court has cautioned that ex parte TROs are warranted only in "extremely limited" circumstances. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). Such relief is proper only "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing" or where "notice would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131 (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).

## III.    DISCUSSION

Plaintiff admits he has not provided Mobivity with notice of his TRO request. (Doc. 19 at 11). Plaintiff argues that notice is not required because (1) Mobivity, by not responding to Plaintiff's Complaint, has "already demonstrated that it will not respond to this litigation even when given notice," (2) the distribution of Mobitivy's cash could be distributed—placing the "assets beyond reach"—"by the time any noticed motion could be briefed and heard," and (3) Mobivity will have the opportunity to be heard at a hearing within 14 days under Rule 65(b)(2). (Doc. 19 at 11–12). Plaintiff's Motion does not address "any efforts made to give notice." Fed. R. Civ. P. 65(b)(1).

Plaintiff fails to demonstrate he will suffer "immediate and irreparable injury, loss, or damage" to excuse Rule 65(a)(1)'s notice requirement because Plaintiff's claimed harm is entirely speculative. Plaintiff merely predicts what he believes Mobivity will do with its cash holdings but identifies no evidence to support his theory that Mobivity plans to distribute cash to its shareholders at all, let alone that such a distribution will occur before judgment is entered in this matter.[2] *See Fullybright v. Amazon.com Inc.*, C25-1458-KKE, 2025 WL 3208776, at *1 (W.D. Wash. Oct. 3, 2025) (denying plaintiff's TRO motion based on speculation that "Defendants will be motivated to improperly transfer away funds owed to him" because "such speculative financial harm" is not the type of harm that should be remedied with an *ex parte* TRO). Plaintiff thus fails to satisfy the first prong of Rule 65(b)(1).

Plaintiff's Motion also fails to outline any efforts made to give notice, as required by Rule 65(b)(1)(B). *Compare Walls-Bey v. Perlow*, CV-25-04315-PHX-MTL, 2025 WL 3671822, at *1 (D. Ariz. Nov. 20, 2025), *appeal dismissed*, 25-7703, 2026 WL 673748 (9th Cir. Jan. 27, 2026) (finding *ex parte* TRO relief unavailable in part because plaintiff's motion did not address any efforts made to give the adverse party notice) *with Ruditser*, 2023 WL 2140480 at *3 (plaintiff's four service attempts and attempt to reach the defendant through email constituted "reasonable" efforts to contact the adverse party for Rule 65(b)(1)(B) purposes).

Because Plaintiff has not satisfied the requirements under Rule 65(b)(1), *ex parte* relief is unavailable. *Walls-Bey*, 2025 WL 3671822, at *1.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Indeed, Plaintiff seems to admit that the dissipation of Mobivity's cash is a mere possibility. (Doc. 19 at 11 (noting that the cash distribution "*could be* accomplished" "by the time any noticed motion could be briefed and heard")).

- 5 -

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for an Emergency Temporary Restraining Order, (Doc. 19), is **denied without prejudice**.

Dated this 6th day of April, 2026.

James A. Teilborg
Senior United States District Judge