**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, | No. CV-26-01225-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Circle K Stores Incorporated, et al., | |
| Defendants. | |

Plaintiff Daniel D'Agostino alleges that Defendant Circle K Stores Incorporated ("Circle K") and Defendant Mobivity Holdings Corporation ("Mobivity") (collectively, "Defendants") violated the Telephone Consumer Protection Act ("TCPA") by sending him hundreds of text messages without his consent despite his phone number being registered with the National Do Not Call Registry ("DNC Registry") since 2004. (Doc. 1 at 6). Pending before the Court is Circle K's Motion to Dismiss.[1] (Doc. 11). Plaintiff filed a Response and Circle K filed a Reply. (Docs. 13, 15). Also pending before the Court is Plaintiff's Motion for Leave to File a Sur-Reply in opposition to Circle K's Motion to Dismiss. (Doc. 16). The Court now rules.[2]

---

[1]    Circle K requested oral argument on the motion. (Doc. 11 at 1). The request for oral argument is denied because both parties submitted memoranda discussing the law and facts in support of their positions and oral argument will not aid the Court's decision-making process. *See e.g.*, *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).
[2]    Several other motions are pending before the Court. (Docs. 20, 25, 29). Because they are unrelated to Circle K's Motion to Dismiss, those motions will be addressed in a separate order.

## I.    BACKGROUND

The following summary of facts is taken from the Complaint and attachments thereto. In deciding a motion to dismiss for failure to state a claim, the Court must construe the facts alleged in the Complaint in the light most favorable to the Plaintiff and accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

On July 31, 2004, Plaintiff registered his phone number on the DNC Registry. (Doc. 1 at 6 ¶ 21). Between September 1, 2023 and February 5, 2026, Defendants sent Plaintiff 350 unsolicited marketing text messages to encourage him to purchase goods and services from Circle K stores. (Doc. 1 at 6 ¶¶ 23–24). Plaintiff breaks these 350 messages into four categories:

1. "Isolated Marketing Solicitation" (1 of the 350 messages)

   - Defendants' first text message to Plaintiff was sent on September 1, 2023 and stated: "*Circle K: Finish registering for 7 Inner Circle to unlock your member benefits: circlek.com/inner-circle. Txt HELP 4 Info. Msg&Data rates may apply*." (Doc. 1 at 7 ¶ 26).

2. "Standard Marketing Solicitations" (343 of the 350 messages)

   - Approximately 19 months after Defendants' first message, Defendants "initiated a relentless sequence" of messages beginning April 21, 2025 and ending February 5, 2026. These messages stated: "*Welcome to Circle K! Reply YES to subscribe and receive special offers, updates, and more. Txt HELP4Info, STOP2End. Msg&Data rates may apply*." (Doc. 1 at 7 ¶ 27).

3. "Immediate Profit Solicitations" (2 of the 350 messages)

   - On June 10, 2025 and August 12, 2025, Plaintiff inadvertently answered "YES" to Defendants' prompt to "subscribe and receive special offers, updates, and more." In response to those two accidental "YES" responses, Plaintiff received the following message: "*Hi! You save 25c/gal on your*

- 2 -

*first 5 fill-ups, & then ongoing discounts! Finish enrollment now for instant savings! circlekmobile.page.link/OWh8 Txt STOP 2 End*." (Doc. 1 at 7 ¶ 28).

4. <u>"Fraudulent Confirmations" (4 of the 350 messages)</u>

- In response to Plaintiff's repeated "STOP" responses, Defendants sent four messages confirming that Plaintiff would no longer receive text messages. Those four messages stated: "*Circle K: You've been unsubscribed from all texts on 25050 & will no longer receive text msgs. Txt YES to resubscribe. Q's? Txt HELP. Msg&Data rates may apply*." (Doc. 1 at 7 ¶ 29).

Plaintiff made "exhaustive efforts" to stop Defendants' repeated communications, sending 299 separate opt-out requests by either responding "STOP" or "STOP2End" to Defendants' messages. (Doc. 1 at 2 ¶ 3; Doc. 1 at 8–9 ¶¶ 33–34). Despite these efforts, Defendants continued to send hundreds of messages to Plaintiff. (Doc. 1 at 9). The messages continued even after Defendants averred to Plaintiff that he had been unsubscribed from the communications and would not receive additional messages. (Doc. 1 at 9 ¶ 35).

After receiving the unwanted messages for over two years, Plaintiff mailed a demand letter to Circle K's legal department, (Doc. 1-2 at 50–52), which Circle K received on February 4, 2026, (Doc. 1 at 9 ¶ 37). Following receipt of the demand letter, the text messages "ceased completely after a final message on February 5, 2026." (Doc. 1 at 9, ¶ 38).

Plaintiff filed suit on February 23, 2026, alleging the following claims:

- Count I: Willful Violation of the TCPA (47 U.S.C. § 227(b))
- Count II: Willful and Knowing Violations of the National Do Not Call Registry (47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2))
- Count III: Willful and Knowing Violations of Federal "Quiet Hours" (47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(1))

- Count IV: Willful Violation of Internal Do-Not-Call Procedures (47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d))
- Count V: Willful Violation of the Arizona Consumer Fraud Act (A.R.S. §§ 44-1251 et seq.)
- Count VI: Common Law Intrusion Upon Seclusion
- Count VII: Breach of Implied-in-Fact Contract and Promissory Estoppel

(Doc. 1 at 14–27).

Plaintiff seeks (1) statutory treble damages in the amount of $1,779,000, (2) compensatory damages, (3) punitive damages, (4) a permanent injunction to bar Defendants from transmitting further communications to Plaintiff's phone, (5) costs and interest, and (6) such other and further relief that the Court deems just and proper. (Doc. 1 at 28–29).

## II.    DISCUSSION

Circle K moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 11). Plaintiff moved for permission to file a sur-reply to the Motion to Dismiss. (Docs. 16). The Court begins with the Motion to Dismiss.

### A. Circle K's Motion to Dismiss

#### i. Legal Standard

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2)." Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Ninth Circuit Court of Appeals has instructed that courts must "construe pro se filings liberally" and give such plaintiffs the "benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations and citation omitted). A complaint filed by a pro se litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

Courts ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1095 (D. Ariz. 2024). Consideration of such extrinsic evidence typically converts a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, a court may consider "(1) evidence that the court has judicially noticed, and (2) evidence incorporated, either literally or by reference, into the plaintiff's complaint" without converting the motion to dismiss into a summary judgment motion. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 746 F. Supp. 3d 749, 755 (D. Ariz. 2024).

### ii. Circle K's Reference to Evidence Outside the Pleadings

In support of its Motion to Dismiss under Rule 12(b)(6), Circle K attached 72 pages of exhibits for the Court's consideration. (Doc. 11-1). Circle K attached (1) screenshots of its website "as preserved on the Wayback Machine from August 2023" ("Exhibit A"), (2) a log of Plaintiff's alleged purchases/transaction history from Circle K stores, ("Exhibit 1") and (3) a declaration of Carly Lee, "the head of loyalty for North America for Defendant Circle K Stores Inc." ("Exhibit B"). (Doc. 15 at 6; Doc. 11-1).

Given the general rule against considering evidence outside the pleadings on a 12(b)(6) motion, this Court must first determine what evidence, if any, it may consider in

- 5 -

resolving Circle K's motion. To aid in this inquiry, the Court ordered Circle K to, in its Reply, address Rule 12(d) and explain how the Court can consider 72 pages of exhibits in resolving the Motion to Dismiss. (Doc. 12); Fed. R. Civ. P. 12(d).

In reply, Circle K noted that the "the Court need not consider [its] exhibits to address the primary legal issues presented in the Motion – namely, that the alleged texts at issue are outside the purview of the TCPA as a matter of law." (Doc. 15 at 2 n.1). Despite stating that the exhibits were not necessary to grant the Motion to Dismiss, Circle K went on to argue that "the exhibits are properly included for consideration as judicially noticeable (Exhibit A), and as context for the undisputed facts surrounding Defendant's SMS-enrollment process (Exhibit [1])." The Court will address Circle K's arguments as to Exhibit A and Exhibit 1.[3]

### a. Exhibit A

Circle K argues that Exhibit A—i.e., Circle K's website from August 2023—"makes clear" that Circle K messages its customers "only after those customers enter their phone number during a purchase or transaction and consent to receive messages." (Doc. 15 at 6). Because Plaintiff allegedly consented to the text messages, Circle K contends that it cannot be held liable for violating the TCPA. (Doc. 11 at 6). Circle K argues that the Court can take judicial notice of Exhibit A. (Doc. 15 at 6).

Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." A fact is not subject to reasonable dispute if it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).

Circle K cites to caselaw holding that courts may take judicial notice of websites

---

[3]   Circle K's Reply does not acknowledge Exhibit B—the sworn declaration of Carly Lee, "the head of loyalty for North America for Defendant Circle K Stores Inc." attached to the Motion to Dismiss—or offer any explanation as to how the Court could properly consider this extrinsic evidence. The Court interprets Circle K's lack of argument regarding this exhibit (despite the Court's explicit Order at Doc. 12) as Circle K's admission that the evidence is not properly before the Court and cannot be considered in resolving the 12(b)(6) motion.

when the authenticity of the website or the accuracy of the information on the website is undisputed. (Doc. 11 at 6, n.1 (citing *Poll v. Stryker Sustainability Sols., Inc.*, No. CIV 13-440-TUC-CKJ, 2014 WL 199150, at *2 (D. Ariz. Jan. 17, 2014)); (Doc. 15 at 6 (citing *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017)). Plaintiff's lodged sur-reply argues that the Court should not take judicial notice of Circle K's website.[4] (Doc. 17). Plaintiff argues that Circle K does not merely seek notice of the information contained on its website, but seeks to establish the inference that customers only receive Circle K text messages if they have consented to receive such messages. (Doc. 17 at 3). Plaintiff disputes this inference, (Doc. 17 at 3), and the Complaint alleges that Plaintiff continued to receive hundreds of text messages despite his attempts to opt out by issuing various "STOP" or "STOP2End" commands.

Circle K asks this Court to take judicial notice of its website as it existed in 2023[5] and conclude that any person receiving a text message from Circle K consented to those communications. In essence, Circle K asks the Court to make a dispositive finding regarding the affirmative defense of consent for Plaintiff's TCPA claims. *See Abboud v. Circle K Stores Inc.*, CV-23-01683-PHX-DWL, 2025 WL 307039, at *10 (D. Ariz. Jan.

---

[4] The Court must first rule on Plaintiff's Motion for Leave to File a Sur-Reply, (Doc. 16), and determine whether the Court will consider the arguments presented in the lodged sur-reply (Doc. 17). Although sur-replies are generally disfavored, a district court may, in its discretion, permit a party to file a sur-reply, considering whether (a) "the movant's reply in fact raises arguments or issues for the first time," (b) "the nonmovant's proposed sur-reply would be helpful to the resolution of the pending motion," and (c) "the movant would be unduly prejudiced were leave to be granted." *Smarthealth Inc. v. Chemotechnique MB Diagnostics AB*, CV-25-00115-PHX-JJT, 2025 WL 3527499, at *1 (D. Ariz. Dec. 9, 2025) (internal quotations and citation omitted).

Circle K's Reply indicates that its exhibits should be considered by the Court because they are undisputed. (Doc. 15 at 6–7). Because Circle K makes this argument for the first time its Reply—and in doing so, makes sweeping conclusions about Plaintiff's position on Circle K's exhibits—the Court will consider Plaintiff's sur-reply to the extent he rebuts Circle K's arguments about the extrinsic-evidence exhibits. Plaintiff's sur-reply also claims that Circle K's Reply introduces new legal arguments that were "wholly absent from the [Motion to Dismiss]" and seeks to rebut these allegedly "new" legal theories. The Court will consider whether to address Plaintiff's arguments on Circle K's "new" theories—which go to the merits of Plaintiff's TCPA claims—*infra* in Section II.A.iii.b, page 13.

[5] The Court notes that the majority of the conduct Plaintiff complains of occurred between April 2025 and February 2026. (Doc. 1 at 7). It is unclear whether Circle K's website has remained unchanged over the years or if there have been material revisions to the site, rendering its relevance questionable.

27, 2025) (noting that a defendant cannot be liable under the TCPA for a message sent to a person with their invitation or permission, and stating that the presence of such consent "is an affirmative defense for which the defendant bears the burden of proof") (internal quotations and citation omitted). This request is not properly before the Court on a motion to dismiss. At the Rule 12(b)(6) stage, the only question is whether Plaintiff's Complaint states a plausible claim.

Because Exhibit A—and the inference Circle K seeks to draw from it—is disputed, the Court declines to take judicial notice and will not consider the exhibit in addressing the Motion to Dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018) ("It is improper to judicially notice a [document] when the substance of the [document] is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes.") (internal quotations and citation omitted).

**b.**  Exhibit 1

Circle K argues that every text message that Plaintiff received was sent "only after [Plaintiff] entered his number during a purchase to consent to receive Circle K messages." (Doc. 11 at 7). In support, Circle K attached Exhibit 1, the "D'Agostino Transaction Report." (Doc. 11 at 7; Doc. 11-1 at 24–68). Circle K claims that this report documents every time Plaintiff made a purchase at a Circle K store and entered his phone number in the system, thus prompting the messages he received that form the basis of his TCPA claims. Circle K argues that the Court can consider Exhibit 1 because "Plaintiff does not dispute the accuracy of Defendant's records matching the text messages to [Plaintiff's] purchases at Circle K." (Doc. 15 at 7). Circle K contends the exhibit "makes clear that Plaintiff has manufactured this case and renders any claim that the messages he allegedly received were unsolicited entirely implausible." (Doc. 15 at 7). Plaintiff complains that the transaction log contains no identifying information and does not establish that he consented to the text-message communications. (Doc. 17 at 4–5).

Circle K's arguments go directly to its consent theory. As noted, a court can only consider extrinsic evidence at the pleadings stage if it takes judicial notice of the evidence

or if the evidence is incorporated into the Plaintiff's Complaint. *Ctr. for Biological Diversity*, 746 F. Supp. 3d at 755. Circle K fails to argue that either exception applies to Exhibit 1. And, as described above, the Court cannot, at this stage of the case, make determinative findings on an affirmative defense to Plaintiff's TCPA claims. Accordingly, the Court declines to consider Exhibit 1 in resolving the Motion to Dismiss.

### iii.  Analysis re: Circle K's Motion to Dismiss (Counts I–IV)

Plaintiff's Complaint outlines seven claims, *supra* page 3–4, and Counts I–IV allege violations of the TCPA. The Court will address Counts I–IV together and consider the remaining state-law claims—Counts V–VII—separately.

### a.  Counts I–IV: Violations of the TCPA

Count I alleges that Circle K used an "automatic telephone dialing system" ("ATDS") to send Plaintiff text messages in violation of 47 U.S.C. § 227(b). (Doc. 1 at 14).

Counts II–IV allege claims to relief under 47 U.S.C. § 227(c). (Doc. 1 at 15–18). The TCPA's implementing regulations prohibit a person or entity from initiating any telephone solicitation to (1) "[a]ny residential telephone subscriber before the hour of 8 a.m." or (2) "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government," 47 C.F.R. § 64.1200(c)(1)–(2); *see also Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024). "Telephone solicitation" is defined as

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a)(4). The TCPA grants a private right of action to any consumer who receives more than one call in violation of those regulations within a 12-month period. 47 U.S.C. § 227(c)(5).

Circle K argues that Plaintiff's TCPA claims should be dismissed because (1) the TCPA does not apply to text messages, (2) the text messages at issue were not solicitations, and (3) Plaintiff consented to receiving the text messages. The Court addresses each argument in turn.

1. <u>Text Messages as "Calls" Under the TCPA</u>

Circle K argues that Counts I–IV should be dismissed because he failed to allege that he received a "telephone call," and the TCPA does not apply to text messages. (Doc. 11 at 4). *See* 47 U.S.C. §§ 227(b)(1), (c)(5). To support this argument, Circle K cites *Stockdale v. Skymount Property Group, LLC*, 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026). In *Stockdale*, the plaintiff received text messages soliciting her to sell her home "despite her number's continued presence on the DNC Registry" and she filed suit alleging violations of the TCPA. *Id.* at *1. The *Stockdale* court dismissed the claim because it found that a "telephone call" under the TCPA could not include modern-day text messages. *Id.* at *3–4.

In citing to *Stockdale* and urging this Court to accept its reasoning, Circle K failed to cite binding caselaw from this Circuit arriving at the opposite conclusion. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026). In *Howard*, the Ninth Circuit Court of Appeals concluded that a "a 'text message' constitutes a 'call' within the meaning of the TCPA."[6] *Id.* at 1123–24. Circle K acknowledges *Howard* for the first time in its Reply, arguing that Plaintiff's reliance on the case "is misplaced," and that Counts I and IV should be dismissed for other reasons "even assuming text messages could *potentially qualify* as 'calls' under the TCPA." (Doc. 15 at 3) (emphasis added). There is no question

---

[6] The Court of Appeals noted it had previously held, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), that "it was 'reasonable' to defer to the [Federal Communications Commission's ("FCC")] conclusion that the term 'call' in [47 U.S.C.] § 227 includes a "text message." *Id.* (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). The U.S. Supreme Court overruled *Chevron* in 2024. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). In *Howard*, the Court of Appeals acknowledged its *Satterfield* holding "was framed . . . in terms of the then-applicable deference required to be given to the FCC's construction," but found its prior holding—that a text message is a call under the TCPA—"would be the same even in the absence of *Chevron* deference." *Howard*, 164 F.4th at 1123.

- 10 -

as to whether text messages are calls under the TCPA in this Circuit. Although Circle K's counsel seems determined to ignore it, settled law from the Ninth Circuit Court of Appeals establishes that a TCPA violation may arise from unsolicited text messages.

### 2.  Telephone Solicitations

Circle K argues Counts I–IV should be dismissed because the messages Plaintiff received are not "telephone solicitations" under the TCPA since the messages "do not encourage the purchase or rental of, or investment in, property, goods, or services." (Doc. 11 at 3, 8); *see* 47 U.S.C. § 227(a)(4). Circle K contends the messages were a "continuation of enrollment messages" that are sent after a customer provides his phone number during a transaction at Circle K, and that these "double opt-in messages" are meant to provide "an additional second layer verification to confirm the intent of customers" who had already consented to receive special offers and updates. (Doc. 11 at 3).

"The purpose of a text or call determines whether it qualifies as a telephone solicitation, and courts use 'a measure of common sense' to determine its purpose." *Abboud*, 731 F. Supp. 3d at 1102. Text messages may constitute a telephone solicitation even if the message serves a dual purpose by including "both advertising/telemarketing and merely informational or transactional communications." *Id.* (quoting *Vallianos v. Schultz*, 2019 WL 4980649, *3 (W.D. Wash. 2019) (cleaned up)). Accordingly, a party engaged in telephone solicitation need not directly offer property or services for sale— merely encouraging the future purchase of property or services is sufficient. *Id.*; *see Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at *3 (N.D. Cal. 2015) ("A call that encourages future purchasing activity may be a telephone solicitation, even if the sales pitch is not explicitly contained in the call itself.").

The question, then, is whether it is plausible that the messages Plaintiff received constituted telephone solicitations. The Complaint alleges that Plaintiff received hundreds of messages that had the "objective and intent . . . to encourage the purchase of goods and services at Circle K locations." (Doc. 1 at 6 ¶ 24). Plaintiff provided screenshots of the text messages, which directed him to "Reply YES to subscribe and receive special offers,

updates, and more." (Doc. 1-1). The Court concludes that "[t]hese facts make it plausible that the purpose of the text messages was to encourage Plaintiff to sign up to receive offers for future shopping at Circle K." *Abboud*, 731 F. Supp. 3d at 1103–05 (three text messages advising plaintiff to reply "YES" to sign up and receive special offers from Defendant Circle K made it plausible the messages were telephone solicitations under the TCPA). Indeed, as the *Abboud* court noted, "it is difficult to imagine why [Circle K] would repeatedly encourage [Plaintiff] to sign up for offers other than to encourage [him] to make future purchases of goods at [Circle K's] stores based on those offers." *Id.* at 1103.

Accepting the Complaint's factual allegations as true, it is plausible that the hundreds of messages Plaintiff received were telephone solicitations within the meaning of the TCPA.

3. <u>Messages Sent with Consent or Sent Pursuant to an Established Business Relationship</u>

The TCPA only prohibits *unsolicited* communications—a telephone solicitation falls outside the purview of the TCPA if the call is transmitted to (1) "to any person with that person's prior express invitation or permission," or (2) "to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4). Circle K argues that its communications with Plaintiff do not subject it to liability under the TCPA because Plaintiff consented to the messages and the messages were sent pursuant to the parties' established business relationship. (Doc. 11 at 6–8).

The Complaint alleges that Plaintiff received his first text message from Circle K on September 1, 2023. (Doc. 1 at 7 ¶ 26). Circle K alleges that "it has records for every transaction by Plaintiff" and that those records confirm Plaintiff visited a Circle K store on September 1, 2023 to purchase cigarettes and snacks.[7] (Doc. 11 at 7). Circle K alleges that Plaintiff entered his phone number when making those purchases, which resulted in the first text message and established the parties' "business relationship." (Doc. 11 at 7). Circle K insists that "the subsequent messages that Plaintiff alleges he received" were also sent

---

[7]   Plaintiff claims he is not the individual that made these purchases and affirms he "is a lifelong non-smoker and has never purchased cigarettes as an adult." (Doc. 13 at 5).

- 12 -

with Plaintiff's consent and pursuant to the parties' "pre-existing relationship." (Doc. 11 at 8; Doc. 11 at 8–12 (repeating consent arguments)).[8]

Plaintiff rebuts these allegations, claiming that he did not sign up for any programs with Circle K, provide his phone number for marketing purposes, or maintain a business relationship with Circle K. (Doc. 1 at 7 ¶ 25). Plaintiff "denies ever entering his phone number at a Circle K store or visiting their website for enrollment purposes," (Doc. 13 at 5), and argues that the 299 opt-out requests he sent in response to Circle K's messages "constitute a complete revocation of any alleged consent," (Doc. 13 at 9).

At this stage of the case, the Court must accept Plaintiff's allegations as true. *Abboud*, 731 F. Supp. 3d at 1101, 1105 (accepting plaintiff's allegation that she "never provided her telephone number to [Circle K] and never consented to receive any text messages from [Circle K]" as true at the motion to dismiss stage); *Abrahamian v. loanDepot.com LLC*, 2024 WL 1092442, *3 (D. Ariz. 2024) (plaintiff adequately pleaded that he did not consent to defendant's messages based on his allegation that "he never provided his telephone number to Defendant"); *Blalack v. RentBeforeOwning.com*, 2022 WL 7320045, *5 (C.D. Cal. 2022) (defendant's argument that "someone signed up for and wanted to receive the[] messages" sent to plaintiff presented a factual question the court could not resolve on a motion to dismiss).

### b.  Plaintiff's Motion to File a Sur-Reply

Plaintiff filed a Motion for Leave to File a Sur-Reply, alleging that Circle K's Reply impermissibly introduces new legal arguments that were not presented in its Motion to

---

[8]    Embedded into Circle K's Motion to Dismiss is a screenshot from a Circle K security camera allegedly showing Plaintiff making a purchase on February 19, 2026 at 5:17am. (Doc. 11 at 11). Circle K attempts to use this photo to bolster its consent theory and rebut Plaintiff's claims that the early-morning text messages he received disrupted his sleep/interfered with his solitude. (Doc. 1 at 8; Doc. 11 at 11). Circle K's inclusion of and reliance on this photo raises numerous issues. First, it is not properly before this Court for consideration on a Rule 12(b)(6) motion. Indeed, Circle K has not argued that the evidence should be evaluated under the judicial notice or incorporation doctrine exceptions, and the Court finds neither would apply because Plaintiff disputes that he is the man portrayed in the photo. (Doc. 13 at 5–6). Second, the Court questions the relevance of the evidence— Plaintiff alleges that he received his last text from Circle K on February 5, 2026 and does not allege a TCPA violation for any text messages received beyond that date. Conduct occurring on February 19, 2026 appears to fall outside the scope of Plaintiff's Complaint.

Dismiss. (Doc. 16 at 3).

Upon review, the Court agrees with Plaintiff that Circle K raises a new argument in its Reply. The Reply argues that the alleged text messages do not fall within the purview of the TCPA because (1) the messages "were not initiated or made using an artificial or prerecorded voice," and (2) Plaintiff did not "plausible plead that an ATDS was used by Circle K." (Doc. 15 at 2). These arguments are wholly absent from Circle K's Motion to Dismiss, which argued only that the alleged text messages were (a) not an actionable form of communication under the TCPA, (b) not solicitations, and (c) sent with Plaintiff's consent and as part of the parties' business relationship. Accordingly, Circle K's representation that its Motion to Dismiss discussed the artificial-or-prerecorded-voice and ATDS theories is unsupported and incorrect. (Doc. 15 at 2 (incorrectly stating that the newly-presented arguments were "discussed in the Motion [to Dismiss] and herein [in the Reply]")).

Circle K secondarily argues, in its Response to Plaintiff's Sur-Reply Motion, that its Reply arguments were made in response to the arguments Plaintiff raised in his opposition to the Motion to Dismiss. (Doc. 26 at 2). Circle K explains that Plaintiff's Response to the Motion to Dismiss cited *Howard v. Republican National Committee* to support his argument that the TCPA applies to text messages. (Doc. 26 at 2). Circle K contends it was entitled to distinguish *Howard*, (Doc. 26 at 2), and the Court agrees. Circle K permissibly argued that *Howard*'s holding only established that "voice" text messages qualified as calls under the TCPA.[9]

However, Circle K's argument that Plaintiff failed to plausibly plead that Circle K

---

[9]     But this argument is without merit. The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using [1] any automatic telephone dialing system or [2] an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). *Howard* broadly recognized that text messages are calls under the TCPA. *Howard*, 164 F.4th at 1124 ("[A] text message is properly deemed to be a "call" within the meaning of the TCPA."). Accordingly, a text message is a call for TCPA-liability purposes if it is sent using an artificial or prerecorded voice ***or*** an ATDS. *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1160 (9th Cir. 2023).
     Plaintiff's request to file a sur-reply to oppose this argument is denied.

used an ATDS to send the alleged text messages was not raised in its initial Motion to Dismiss, and was not responsive to arguments raised by Plaintiff's Response to the Motion to Dismiss. Accordingly, the Court will not address the ATDS argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Aguilar v. Peters*, No. CV-23-00268-TUC (SHR), 2024 WL 4870496, at *13 (D. Ariz. Nov. 22, 2024) ("It is well established that new arguments and evidence presented for the first time in reply are waived.") (citation omitted).

Because the Court will not consider this new argument, Plaintiff's Motion for Leave to File a Sur-Reply—to the extent he seeks to rebut the ATDS theory—is denied as moot.[10]

### c.   Conclusion

For the foregoing reasons, Circle K's Motion to Dismiss Counts I–IV is denied.

### iv.   Analysis re: Circle K's Motion to Dismiss (Counts V-VII)

Plaintiff alleges three state-law claims. The Court addresses each claim in turn.

### a.   Count V: Willful Violation of the Arizona Consumer Fraud Act

Plaintiff alleges that on June 10, 2025, August 12, 2025, January 9, 2026, and January 10, 2026, Circle K sent Plaintiff the following message: "*Circle K: You've been unsubscribed from all texts on 25050 & will no longer receive text msgs. Txt YES to resubscribe. Q's? Txt HELP. Msg&Data rates may apply.*" (Doc. 1 at 7 ¶ 29; Doc. 1 at 20 ¶ 103). After sending the June 10, 2025 confirmation that Plaintiff would be unsubscribed from future text messages, Circle K transmitted 308 additional messages to Plaintiff. (Doc. 1 at 9 ¶ 35). Plaintiff alleges that in doing so, Circle K violated the Arizona Consumer Fraud Act. (Doc. 1 at 19–20).

"The purpose of the [Arizona Consumer Fraud] Act is to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in

---

[10]    As discussed above, *supra* page 7 n.2, the Court granted Plaintiff's sur-reply motion (Doc. 16) and considered the lodged sur-reply (Doc. 17) to the extent that Plaintiff rebutted Circle K's arguments about the extrinsic-evidence exhibits. The Court declines to consider the lodged sur-reply except for this limited purpose.

consumer transactions." *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220, 1224 (Ariz. Ct. App. 1995). The Arizona Consumer Fraud Act (the "CFA") provides as follows:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A).

The elements of private cause of action under the CFA are "[1] are a false promise or misrepresentation [2] made in connection with the sale or advertisement of merchandise and [3] the [plaintiff's] consequent and proximate injury." *Castle v. Barrett-Jackson Auction Co., LLC*, 276 P.3d 540, 542 (Ariz. Ct. App. 2012). The statute requires that a person intend for others to rely on the false promise or misrepresentation "in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A). Accordingly, there must be a sale between the parties or an advertisement in relation to a sale between the parties to support a cause of action under the CFA. *See Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 453–54 ¶¶ 36–37 (Ariz. Ct. App. 2012), *vacated in part*, 306 P.3d 1 (Ariz. 2013) (vacating ¶¶ 24–31).

Plaintiff alleges that that the four messages confirming he had been unsubscribed were "material representations and false promises" because Circle K "knew these statements were false" and "intended for Plaintiff to rely on these false promises so that he would cease his efforts to block the number or initiate legal action, thereby allowing [Circle K] to continue their unauthorized access to Plaintiffs cellular device for marketing profit." (Doc. 1 at 20 ¶ 104). Plaintiff alleges that he suffered actual damages" from Circle K's conduct, including "the economic value of 50+ hours of time, resource depletion, and systemic sleep deprivation" caused by 146 early-morning text messages. (Doc. 1 at 20 ¶ 105).

Circle K acknowledges that Plaintiff satisfies the first and third elements for a private right of action under the CFA, but argues that Count V should be dismissed because

Plaintiff fails to identify any "sale or advertisement of any merchandise" regarding the opt-out confirmation messages. (Doc. 11 at 12–13). The Court agrees. The four messages supporting Plaintiff's CFA claim merely inform Plaintiff that he has been "unsubscribed from all texts" and "will no longer receive text msgs." (Doc. 1 at 7 ¶ 29). At most, the messages falsely promise that future communications will cease. But the messages do not allude to the sale or advertisement of merchandise in any way. Because the message does not conceal, suppress, or omit any material fact "in connection with the sale or advertisement of any merchandise," Plaintiff fails to state a claim under the CFA, and the claim will be dismissed.

Although the Court is not dismissing the entire Complaint, in which circumstance the Court must consider whether the deficiencies in the complaint could be cured by amendment, the Court has nonetheless considered whether leave to amend should be granted. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); *see* Fed. R. Civ. P. 15(a).

The Court finds that amendment under Rule 15(a) would be futile because Plaintiff cannot allege new facts that will transform these four text messages—of which Plaintiff attached screenshots, (*see* Docs. 11-1, 11-2)—into communications that portray false, deceptive, or misleading information about the sale or advertisement of merchandise. Accordingly, Count V is dismissed with prejudice.

### b.  Count VI: Common Law Intrusion Upon Seclusion

Plaintiff alleges that Circle K intentionally and repeatedly intruded upon his "solitude, seclusion, and private affairs by transmitting 350 unauthorized marketing solicitations to his private cellular telephone." (Doc. 1 at 22 ¶ 110). Plaintiff contends that the nature and frequency of the messages "would be highly offensive to any reasonable person." (Doc. 1 at 22 ¶ 111). In support of this claim, Plaintiff cites to *Navient Solutions,*

*LLC v. Law Offices of Jeffrey Lohman*, 2020 WL 1864871, at \*12 (D. Ariz. 2020). This case does not exist. As Circle K notes in its Motion to Dismiss, a search of "2020 WL 1864871" returns an Ohio Public Utilities Commission Finding and Order titled "*In the Matter of the Proper Procedures and Process for the Commission's Operations and Proceedings During the Declared State of Emergency and Related Matters*." (Doc. 11 at 13). The Court believes that Plaintiff intended to cite to a case from the Eastern District of Virginia. *See Navient Sols., LLC v. Law Offices of Jeffrey Lohman*, 1:19-CV-461 (LMB/TCB), 2020 WL 1867939 (E.D. Va. Apr. 14, 2020). However, that case is irrelevant to Plaintiff's claim because it is devoid of any discussion regarding the tort of inclusion upon seclusion.

Circle K argues Count VI should be dismissed because Plaintiff fails to provide any basis in Arizona law for his "intrusion of seclusion" claim. (Doc. 11 at 13). In response, Plaintiff argues that the tort of intrusion upon seclusion is supported by "decades of state jurisprudence." (Doc. 13 at 12).

Arizona state courts recognize four invasion-of-privacy claims, including the tort of intrusion upon seclusion, *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997), which "occurs when one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns and the intrusion is highly offensive to a reasonable person," *Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 995 (App. 2019), *vacated in part*, 482 P.3d 390 (Ariz. 2021) (vacating ¶¶ 25–35) (internal quotations and citation omitted). A defendant is "subject to liability . . . only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Hart*, 947 P.2d at 853 (quoting Restatement (Second) of Torts § 652B). Intrusion upon seclusion usually involves

(1) physical intrusion into a place in which the plaintiff has secluded himself;

(2) the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires; or

(3) some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet,

examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.

*Shepherd*, 441 P.3d at 995 (internal quotations and citation omitted). Conclusory allegations that a defendant's conduct intruded upon the plaintiff's solitude and seclusion, without more, are insufficient to support a claim for relief. *Id.*

Plaintiff claims that the "transmission of 350 messages over several months, including 146 messages during hours of rest, represents . . . a substantial burden to Plaintiff['s] existence." (Doc. 1 at 23, ¶ 111). He further alleges that Circle K, by initiating 146 solicitations—some of which occurred between 4:11 a.m. and 5:30 a.m.—intentionally violated his right to peace and solitude, causing "severe physiological stress and systemic sleep deprivation." (Doc. 1 at 23, ¶ 112).

Plaintiff does not cite, and this Court's independent research did not reveal, any Arizona caselaw regarding the tort of intrusion upon seclusion as it relates to unwanted text messages. However, the Restatement (Second) of Torts provides some support for Plaintiff's position that repeated, incessant text messages can support an invasion of privacy claim. The Restatement provides:

> [T]here is no liability for [the tort of intrusion upon seclusion for] knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. *It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.*

Restatement (Second) of Torts § 652B, cmt. d (emphasis added).

And the Ninth Circuit Court of Appeals has found that auto-dialed text messages typically result in "an immediate intrusion in the form of a display of a preview of the text on the phone's screen (even if locked), a sound, a vibration, or some combination of those," thereby producing "the particular type of intrusion on privacy at which the [TCPA] is aimed, which is an intrusion upon 'seclusion.'" *Howard*, 164 F.4th at 1124. The Eleventh Circuit Court of Appeals has also indicated that unwanted text messages, like unwanted phone calls, are among the privacy intrusions giving rise to liability for intrusion upon

seclusion. *See Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) ("And as with 'the unwanted ringing of a phone from a phone call,' the 'undesired buzzing of a cell phone from a text message . . . is an intrusion into peace and quiet in a realm that is private and personal.'") (citation omitted). The *Drazen* court acknowledged, however, that it is difficult to draw the line in determining how *many* unwanted text messages are required before the intrusion becomes "highly offensive to a reasonable person." *See id.*

Plaintiff allegedly received 349 unwanted text messages over (approximately) a 9-month period.[11] This averages to 1.2 text messages per day (349 messages/290 days). 146 of those 349 communications apparently took place before 8:00 a.m. Accepting the Complaint's factual allegations as true, as the Court must at this stage of the case, the Court finds that Plaintiff has plausibly pled an intrusion upon seclusion claim, and will deny Circle K's request to dismiss this claim.

### c. Count VII: Breach of Implied-in-Fact Contract and Promissory Estoppel

Plaintiff contends that Circle K made a unilateral offer to enter into a contract by directing Plaintiff to respond "Txt HELP4Info" or "STOP2End" in the text messages. (Doc. 1 at 26, ¶ 117). By including the "Txt HELP4Info" or "STOP2End" options, Plaintiff claims that Circle K "established the exact method of performance required to terminate the relationship and cease all communications." (Doc. 1 at 26 ¶ 117). Plaintiff alleges he "accepted" the unilateral offer through "performance"—i.e., by responding "STOP2End" on "299 separate occasions." (*See* Doc. 1 at 26 ¶ 118). Plaintiff asserts that the "contract" is supported by consideration because he "provided the economic value of his time" in exchange for Circle K's promise to cease the communications. (Doc. 1 at 26 ¶ 119). Plaintiff claims Circle K breached the agreement by continuing to send him texts after he had opted out. (Doc. 1 at 26 ¶ 120). He alternatively alleges a promissory estoppel claim, claiming he detrimentally relied on Circle K "clear, express promises" that he would not receive additional messages. (Doc. 1 at 26–27 ¶¶ 121–23; Doc. 1 at 7 ¶ 29 (Circle K sent

---

[11]     Although the first text message occurred on September 1, 2023, the remaining 349 messages were sent between April 21, 2025 and February 5, 2026. (Doc. 1 at 8).

four messages stating: "*Circle K: You've been unsubscribed from all texts on 25050 & will no longer receive text msgs.*")).

Plaintiff's Complaint is devoid of any support for his novel theory that that he and Circle K, by virtue of Plaintiff's responses to various marketing communications, were contractually bound or that the doctrine of promissory estoppel applies to these facts.

"An implied-in-fact contract is a true contract, differing from an express contract only insofar as it is proved by circumstantial evidence rather than by express written or oral terms." *Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1982). To support an "implied-in-fact" contract claim, a party must still demonstrate the elements of a binding contract, including "mutual assent or certainty as to the critical terms of the agreement." *Id.* When "a reasonable person" could conclude that both parties intended to contract for certain terms, an implied-in-fact contract is formed. *See Demasse v. ITT Corp.*, 984 P.2d 1138, 1143 (Ariz. 1999).

Circle K argues that "[n]o reasonable person could ever conclude that opting out of a company's messaging [system] would 'create contractual obligations.'" (Doc. 11 at 14). The Court agrees. Circle K further claims that it was unable to locate caselaw suggesting (1) that a consumer's decision to opt out of a messaging program creates an implied-in-fact contract or constitutes the acceptance of a unilateral offer, or (2) that a company's confirmation of an opt-out request constitutes a "promise" to support a promissory estoppel claim. (Doc. 11 at 15). Plaintiff failed to identify any such authority and the Court's independent research similarly failed to reveal any law supporting Count VII. "[A]lthough Plaintiff appears in this Court pro se, the Court is not required to scour his Complaint and piece together his claims for him." *Moore v. Maricopa Cnty. Juvenile Court*, CV-18-01553-PHX-JJT, 2018 WL 9848169, at *1 (D. Ariz. Sept. 18, 2018), *aff'd*, 786 Fed. Appx. 89 (9th Cir. 2019). Indeed, plaintiffs are responsible for identifying the legal basis for the claims identified in their complaints. *See id.* at *2. Given Plaintiff's failure to do so, the Court will dismiss Count VII.

Because this claim is meritless and its defects could not be cured with amendment,

Count VII is dismissed with prejudice. *See Schreiber Distrib. Co.*, 806 F.2d at 1401; *see* Fed. R. Civ. P. 15(a).

### III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Circle K's Motion to Dismiss (Doc. 11) is **granted in part and denied in part**, as specified herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 16) is **granted in part and denied in part as moot**, as specified herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall file Plaintiff's lodged Sur-Reply at Doc. 17.

**IT IS FURTHER ORDERED** that Defendant Circle K shall answer the non-dismissed counts of the complaint within 14 days of the date of this Order.

Dated this 22nd day of April, 2026.

James A. Teilborg
Senior United States District Judge