**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, | No. CV-26-01225-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Circle K Stores Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiff Daniel D'Agostino's Motion for Protective Order. (Doc. 48). Because Plaintiff requested expedited consideration of the motion, (Doc. 48), the Court ordered expedited briefing (Doc. 50). Defendant Circle K filed a Response and Plaintiff filed a Reply. (Docs. 52, 53). Also pending before the Court is Plaintiff's Motion to Seal (Doc. 49).[1] The Court now rules.

## I.      BACKGROUND

Plaintiff alleges that Circle K violated the Telephone Consumer Protection Act ("TCPA") by sending him 350 unsolicited marketing text messages between September 1, 2023 and February 5, 2026. (Doc. 1 at 6). Plaintiff also alleges an intrusion upon seclusion claim under Arizona law. (Doc. 1 at 22). In its Motion to Dismiss, Circle K argued that Plaintiff failed to state a claim under the TCPA because Plaintiff consented to receipt of the text messages and the messages were sent pursuant to the parties' established business relationship. (Doc. 11 at 6–8). Circle K claimed that "it has records for every transaction

---

[1]      Circle K's Motion for Leave to File a Sur-Reply to Plaintiff's Motion for Protective Order (Doc. 56) will be addressed in a separate order. __

by Plaintiff"[2] and that those records confirm Plaintiff visited a Circle K store on September 1, 2023 to purchase cigarettes and snacks. (Doc. 11 at 7; *see also* Doc. 11-1 at 24–68 (detailing transaction records)). Circle K alleged that Plaintiff entered his phone number when making those purchases, which resulted in the first text message and established the parties' "business relationship." (Doc. 11 at 7). Circle K insisted that "the subsequent messages that Plaintiff alleges he received" were also sent with Plaintiff's consent and pursuant to the parties' "pre-existing relationship." (Doc. 11 at 8). Because Plaintiff rebutted Circle K's allegations—claiming that he did not sign up for any programs with Circle K, provide his phone number for marketing purposes, or otherwise maintain a business relationship with Circle K—the Court denied the Motion to Dismiss Plaintiff's TCPA claims. (Doc. 35 at 13, 15).

During discovery, Circle K subpoenaed U.S. Bank and Wells Fargo Bank (the "Banks") to produce, from January 1, 2023 through the present, "all Documents and Communications" concerning the account holder of three different credit cards, "including documents sufficient to identify the first and last name of the card holder, the address of the card holder, the account to whom the card belongs, and any other authorized signers or card holders for the account to which the card is associated." (Doc. 48-1 at 5–12 (Wells Fargo subpoena); Doc. 48-1 at 14–21 (U.S. Bank subpoena), collectively "the Bank Subpoenas"). These three credit cards were allegedly used in the transactions identified in Circle K's transaction report, (Doc. 11-1 at 24–68), and Circle K subpoenaed the Banks to determine the identity of the account holder associated with the credit cards, (Doc. 52 at 2). Beyond the Bank Subpoenas, Circle K also emailed Plaintiff a Request for Inspection asking Plaintiff to surrender his electronic devices for inspection as follows:

> For the RELEVANT TIME PERIOD, each computer, phone, or other digital

---

[2] Circle K attached the transaction records to its Motion to Dismiss, labeled as Exhibit 1, the "D'Agostino Transaction Report." (Doc. 11 at 7; Doc. 11-1 at 24–68). Circle K claimed that the D'Agostino Transaction Report documented every time Plaintiff made a purchase at a Circle K store and entered his phone number in the system, thus prompting the messages Plaintiff received that formed the basis of his TCPA claims. The Court refused to consider the report in resolving the Motion to Dismiss because Circle K failed to argue that an exception applied to overcome the general prohibition against the consideration of extrinsic evidence at the pleadings stage. (Doc. 35 at 8–9).

device utilized and/or available to [Plaintiff] on which COMMUNICATIONS are stored (including e-mail communications) and DOCUMENTS are stored or accessible concerning "Circle K", including but not limited to any search engine queries (and accordingly search history) for "Circle K," "CircleK" (or any similar variation), "TCPA," "Abboud" and/or "STOP2End."

(Doc. 48-2).

Plaintiff filed the instant motion seeking a "protective order [to] quash[]" the Bank Subpoenas and the Request for Inspection. (Doc. 48 at 2). However, a motion to quash or modify a subpoena is different from a motion for a protective order. *Compare* Fed. R. Civ. P. 45(d)(3) (outlining circumstances in which a court must quash or modify a subpoena) *with* Fed. R. Civ. P. 26(c) (authorizing the court, upon a motion from "a party or any person from whom discovery is sought," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). It appears that Plaintiff seeks to quash the Bank Subpoenas or, in the alternative, modify the subpoenas. Because the Request for Inspection is not a subpoena under Rule 45, the Court interprets Plaintiff's objection to that discovery request as a motion for a protective order under Rule 26(c). However, the Court will address Plaintiff's Motion for Protective Order—as it relates to the Request for Inspection—in a separate order.

## II.    LEGAL STANDARD

Rule 45(d)(3)(A) governs motions to quash or modify a subpoena and identifies circumstances in which a court is required to grant such a motion. The rule provides:

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i)     fails to allow a reasonable time to comply;

(ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). "When considering a motion to quash, courts look to Rule 26

- 3 -

to define the permissible scope of discovery applicable to a Rule 45 subpoena." *AmSurg Holdings Inc. v. Anireddy*, CV-17-04181-PHX-SMB, 2020 WL 1703617, at *3 (D. Ariz. Apr. 8, 2020); *see also, e.g.*, *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (in considering a motion to quash a subpoena duces tecum, the court must also consider whether the subpoena "is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)"). Rule 26 provides for a broad scope of discovery and allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

### III.   DISCUSSION

Plaintiff argues that the Court should quash the Bank Subpoenas in their entirety because the requests are overbroad and Circle K did not allow the Banks a reasonable amount of time to comply. (Doc. 48 at 5–7). Circle K argues that Plaintiff lacks standing to challenge the Bank subpoenas because the subpoenas seek discovery from the Banks, not Plaintiff. (Doc. 52 at 7).

"The Ninth Circuit has not explicitly addressed whether a party can move to quash a subpoena served upon a nonparty." *Brown v. Sperber-Porter*, CV-16-02801-PHX-SRB, 2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017). While some courts have held that parties to a suit lack standing to move to quash a subpoena if the subpoena was targeted at a nonparty, other courts have found that a party may move to quash a subpoena if the party claims privilege or a personal right in the information subpoenaed from a nonparty. *Id.*; *see also Davenport v. SP Jedi Inc.*, CV-18-02580-PHX-SMM, 2019 WL 8226377, at *1 (D. Ariz. Apr. 19, 2019) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.") (internal quotations and citation omitted).

Here, Circle K subpoenaed the Banks to produce "all Documents and Communications" concerning the account holder of three different credit cards that were

connected to various transactions at Circle K stores. "Courts are divided as to whether a party in a civil suit has a privacy interest in [the party's] banking records sufficient to give [the party] standing to move to quash a subpoena served on a non-party financial institution." *Ocean Garden Products Inc. v. Blessings Inc.*, CV-18-00322-TUC-RM, 2020 WL 4933646, at *2 (D. Ariz. Aug. 24, 2020); *Davenport*, 2019 WL 8226377, at *2 (noting the caselaw is mixed on "whether individuals have standing to challenge non-party subpoenas for [the individual's] financial information").

The Court assumes without deciding that the standing inquiry turns on whether the party opposing discovery can demonstrate that they have a personal right in the information being sought, even if the party is not the subject of the subpoena. The Court is unable to conclude that Plaintiff has standing to support his Motion to Quash[3] because it is not clear to the Court whether Plaintiff has a personal right to the information subpoenaed from the Banks. Plaintiff implies that the subpoenas seek information concerning his "personal accounts," (Doc. 48 at 2), but then states in his Reply that the only information Circle K "actually needs" from the Banks is "the identity of the cardholder and any authorized users associated with each of the three [credit] card numbers," (Doc. 53 at 3). Because Plaintiff's filings are internally inconsistent as to whether the information sought from the Bank Subpoenas relates to *his* personal financial information (and whether *he* is in fact the cardholder/account owner of the three credit cards at issue), the Court concludes he lacks standing to move to quash the subpoenas. *Compare* (Doc. 48 at 2) *with* (Doc. 53 at 3–4).

To the extent that Plaintiff's Motion to Quash can be construed, in the alternative, as a request for a protective order under Rule 26(c), *see Davenport*, 2019 WL 8226377, at *2, the Court finds he lacks standing for the same reasons described above. Without a clear statement from Plaintiff affirming that the subpoenas seek his personal financial information, the Court is unable to assess whether the subpoenaed information would cause Plaintiff to suffer "annoyance, embarrassment, oppression, or undue burden or expense" in the absence of a protective order. Fed. R. Civ. P. 26(c).

---

[3] Although Plaintiff's Motion is titled as a Motion for Protective Order, he is asking the Court to quash the Bank Subpoenas pursuant to Rule 45.

Plaintiff's request to quash the Bank Subpoenas or narrow their scope is denied.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Protective Order (Doc. 48) is **denied in part** as specified herein. The Court will address Plaintiff's Motion with respect to the Request for Inspection in a separate order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Restrict (Seal) Exhibit E to Plaintiff's Motion for Protective Order (Doc. 49) is **granted**.[4] The Clerk of Court shall seal Doc. 48-5 (Exhibit E to Plaintiff's Motion for Protective Order at Doc. 48) only.

Dated this 9th day of June, 2026.

_____
James A. Teilborg
Senior United States District Judge

---

[4]    Plaintiff seeks to seal Doc. 48-5 because the document "inadvertently included the full credit card account numbers identified in the Document Requests of each Bank Subpoena." (Doc. 49 at 2). Rule 5.2(a) provides that, unless otherwise ordered by the court, electronic filings containing "a financial-account number" should include only "the last four digits of the financial-account number." Fed. R. Civ. P. 5.2(a). Because Doc. 48-5 contains three unredacted, 16-digit credit card numbers, the Court finds that sealing the document is appropriate.
The unsealed, redacted version of Exhibit E is located at Doc. 49-1.