**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel D'Agostino, | No. CV-26-01225-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Circle K Stores Incorporated, | |
| Defendant. | |

On May 28, 2026, Plaintiff Daniel D'Agostino filed a Motion for Protective Order under Federal Rule of Civil Procedure 26(c). (Doc. 48). Therein, Plaintiff challenged (1) two subpoenas Defendant Circle K served upon U.S. Bank and Wells Fargo Bank (the "Banks"), and (2) a Request for Inspection that Circle K served upon Plaintiff. (Doc. 48 at 2). Because Circle K ordered the Banks to produce the subpoenaed information by June 10, 2026, Plaintiff requested an expedited order resolving the motion. (Doc. 48 at 2). The Court ordered expedited briefing, (Doc. 50), and issued an order on June 9, 2026 denying Plaintiff's request to quash the Bank Subpoenas, (Doc. 59). In the June 9 order, the Court noted that it would resolve Plaintiff's challenge to the Request for Inspection through a separate order. Also pending before the Court is Circle K's Motion for Leave to File a Sur-Reply to Plaintiff's Motion for Protective Order. (Doc. 56). The Court now rules.

## I.    BACKGROUND

Plaintiff alleges that Circle K violated the Telephone Consumer Protection Act ("TCPA") by sending him 350 unsolicited marketing text messages between September 1,

2023 and February 5, 2026. (Doc. 1 at 6). In its Motion to Dismiss, Circle K argued that Plaintiff failed to state a claim under the TCPA because Plaintiff consented to receipt of the text messages and the messages were sent pursuant to the parties' established business relationship. (Doc. 11 at 6–8). Circle K claimed that "it has records for every transaction by Plaintiff"[1] and that those records confirm Plaintiff visited a Circle K store on September 1, 2023 to purchase cigarettes and snacks. (Doc. 11 at 7; *see also* Doc. 11-1 at 24–68 (detailing transaction records)). Circle K alleged that Plaintiff entered his phone number when making those purchases, which resulted in the first text message and established the parties' "business relationship." (Doc. 11 at 7). Circle K insisted that "the subsequent messages that Plaintiff alleges he received" were also sent with Plaintiff's consent and pursuant to the parties' "pre-existing relationship." (Doc. 11 at 8). Because Plaintiff rebutted Circle K's allegations—claiming that he did not sign up for any programs with Circle K, provide his phone number for marketing purposes, or otherwise maintain a business relationship with Circle K—the Court denied the Motion to Dismiss Plaintiff's TCPA claims. (Doc. 35 at 13, 15).

During discovery, Circle K emailed Plaintiff a Request for Inspection asking Plaintiff to surrender his electronic devices for inspection as follows:

> For the RELEVANT TIME PERIOD, each computer, phone, or other digital device utilized and/or available to [Plaintiff] on which COMMUNICATIONS are stored (including e-mail communications) and DOCUMENTS are stored or accessible concerning "Circle K", including but not limited to any search engine queries (and accordingly search history) for "Circle K," "CircleK" (or any similar variation), "TCPA," "Abboud" and/or "STOP2End."

(Doc. 48-2). Circle K claims that those search terms "will reveal *when* Plaintiff potentially first researched the *Abboud*[2] case and when Plaintiff first understood he might file a TCPA

---

[1]    Circle K attached the transaction records to its Motion to Dismiss, labeled as Exhibit 1, the "D'Agostino Transaction Report." (Doc. 11 at 7; Doc. 11-1 at 24–68). Circle K claimed that the D'Agostino Transaction Report documented every time Plaintiff made a purchase at a Circle K store and entered his phone number in the system, thus prompting the messages Plaintiff received that formed the basis of his TCPA claims. The Court refused to consider the report in resolving the Motion to Dismiss because Circle K failed to argue that an exception applied to overcome the general prohibition against the consideration of extrinsic evidence at the pleadings stage. (Doc. 35 at 8–9).

[2]    The Court assumes that Circle K is referencing *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. 2024), a case that similarly alleges that Circle K violated the

complaint." (Doc. 52 at 4). Circle K further alleges that the inspection request is relevant to "determine whether and when Plaintiff could have, and should have, mitigated his damages." (Doc. 52 at 4).

Plaintiff moved the Court to issue a "protective order [to] quash[]" the Request for Inspection. (Doc. 48 at 2). However, a motion to quash a subpoena is different from a motion for a protective order. Compare Fed. R. Civ. P. 45(d)(3) (outlining circumstances in which a court must quash or modify a subpoena) with Fed. R. Civ. P. 26(c) (authorizing the court, upon a motion from "a party or any person from whom discovery is sought," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Because the Request for Inspection is not a subpoena under Rule 45, the Court interprets Plaintiff's objection to that discovery request as a motion for a protective order under Rule 26(c).

## II.    LEGAL STANDARD

Rule 26(c) governs protective orders and "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368–69 (9th Cir. 1982). Courts may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Rule 26(c) permits courts to alter the method of discovery requested by a party or to forbid the disclosure or discovery of certain information entirely. *See id.* 26(c)(1)(A)-(H). "The party opposing disclosure has the burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal quotations and citation omitted). The rule confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (internal quotations and citation omitted).

---

TCPA by sending several text messages to the plaintiff without her consent.

### III.    DISCUSSION

Plaintiff argues that the Court should quash[3] the Request for Inspection—which seeks to inspect Plaintiff's computer, phone, or other digital devices for certain search terms—because the request (1) is facially overbroad, (2) "target[s] attorney work product," and (3) imposes an undue burden on Plaintiff because "Plaintiff works on his computer every day and conducts business by phone every day." (Doc. 48 at 8–10). Plaintiff also complains that the request, which would allow Circle K to gain access to or take possession of Plaintiff's devices for a "period of days," has "no procedural safeguards" in place, such as a specific time window or limit on the duration of the inspection. (Doc. 48 at 10). Plaintiff observes that Circle K "has bypassed every standard channel [of discovery]"— such as interrogatories, requests for production, and requests for admission—and jumped directly to the most intrusive form of discovery the Federal Rules contemplate." (Doc. 48 at 8).

Circle K contends that "a large number of hits" for certain search terms on Plaintiff's devices—including "TCPA"; "Abboud"; "Circle K"; "CircleK"; and "STOP2END"— would call into question "Plaintiff's motivations and credibility [in bringing the present suit], as well as his efforts to cause the messages to stop." (Doc. 52 at 9). Circle K insists that the demand for inspection "is narrowly tailored and proportionate to the needs of the case." (Doc. 52 at 8).

The Court disagrees that the request is proportionate to the needs of the case and questions the relevance of the requested search. "In determining appropriate proportional discovery to the needs of the case," courts consider "the importance of the issues, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden

---

[3]     As stated, the Court interprets this as a request for the Court to issue a protective order under Rule 26(c). The rule permits courts to fashion protective orders in a variety of ways, including "forbidding the disclosure or discovery" generally, limiting the scope of discovery, or "prescribing a discovery method other than the one selected by the party seeking discovery." *See* Fed. R. Civ. P. 26(c)(1)(A)–(H) (outlining ways in which court may issue a protective order).

or expense of the proposed discovery outweighs its likely benefit." *Adlerstein v. United States Customs & Border Prot.*, 342 F.R.D. 269, 273 (D. Ariz. 2022).

Here, Circle K asks Plaintiff to surrender "each computer, phone, or other digital device" for inspection for an unspecified period of time. This Court finds this request to be invasive considering the other methods of discovery at Circle K's disposal. *See Massucco v. Group Health Coop. of Puget Sound*, C05-342JLR, 2005 WL 8172575, at *2 (W.D. Wash. Oct. 3, 2005) (comparing "the traditional discovery process in which the responding party controls what it produces and what it does not" to invasive electronic discovery methods, which can impose "substantial additional burden[s]" to parties subject to such requests).[4]

Circle K's chief motivation for the inspection request seems to be aimed at learning "when Plaintiff first understood he might file a TCPA complaint" to prove that Plaintiff "manufacture[d] this million-dollar-plus TCPA claim." (Doc. 52 at 4). The Court struggles to see how this is relevant to resolving the merits of Plaintiff's TCPA claims. Whether Plaintiff did or did not perform research in anticipation of filing his Complaint (and *when* that research, if any, occurred), appears unrelated to the issue this Court must resolve— that is, whether Circle K violated the TCPA by sending Plaintiff hundreds of allegedly unsolicited text messages. And Circle K's other justification for the discovery request— that the search terms will illuminate whether Plaintiff mitigated his claimed damages of over $1 million—also fails to convince the Court that such an invasive search should be permitted at this stage of the proceedings. Plaintiff primarily seeks statutory damages and

---

[4] Circle K offers little explanation as to why it did not explore other methods of discovery before serving the Request for Inspection upon Plaintiff. Circle K merely alleges in conclusory fashion that the "demand for inspection is necessary to avoid issues concerning Plaintiff's credibility" and that "simply permitting Plaintiff to state yes or no [as to] whether he searched a term in response to an interrogatory or request for admission . . . will not resolve the credibility concerns already percolating in this case." (Doc. 52 at 9–10). In essence, Circle K questions Plaintiff's credibility and wants to find the documents and communications it seeks without first asking Plaintiff to produce the information himself. The Court finds this justification insufficient, especially when Circle K has not taken Plaintiff's deposition or given Plaintiff the opportunity to provide the requested documents and communications. *See Massucco*, 2005 WL 8172575, at *2 (rejecting plaintiff's discovery request because there was "no indication that the more invasive" electronic discovery request was necessary when defendant "claim[ed] that it ha[d] already produced or [wa]s in the process of producing [the desired] documents").

courts in this Circuit have held that plaintiffs have no duty to mitigate statutory damages in TCPA cases. *See Trim v. Mayvenn, Inc.*, 20-CV-03917-MMC, 2022 WL 1016663, at \*3 (N.D. Cal. Apr. 5, 2022); *JUUL Labs, Inc. v. Chou*, 676 F. Supp. 3d 827, 848 (C.D. Cal. 2023).

Plaintiff has also indicated to the Court that surrendering his electronic devices would be extremely burdensome because he works on his computer and conducts business on his phone daily. (Doc. 48 at 10). Given these representations, along with the invasiveness and questionable relevance of the demand for inspection, the Court will grant Plaintiff's request to quash the proposed discovery under Rule 26(c).

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Protective Order (Doc. 48) is **granted in part** as specified herein. Circle K's Request for Inspection, as served upon Plaintiff via email on May 12, 2026, (Doc. 48-2), is denied without prejudice to obtain the requested information through other discovery tools, including but not limited to a deposition or request for production.

**IT IS FURTHER ORDERED** that Circle K's Motion for Leave to File a Sur-Reply to Plaintiff's Motion for Protective Order (Doc. 56) is **denied**.[5]

Dated this 17th day of June, 2026.

James A. Teilborg
Senior United States District Judge

---

[5] Circle K alleged that Plaintiff made "significant concessions" in his Reply regarding the Request for Inspection and sought leave to file a sur-reply to "narrow the remaining areas of dispute" with respect to the inspection request. (Doc. 56). Because the Court finds the Request for Inspection is overly intrusive at this early stage and is granting Plaintiff's requested relief, there is no need to consider Circle K's proposed sur-reply.