WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Daniel D'Agostino,

Plaintiff,

v.

Circle K Stores Incorporated,

Defendant.

No. CV-26-01225-PHX-JAT

**ORDER**

**Background**

In short summary, Plaintiff filed this lawsuit alleging that between September 1, 2023, and February 5, 2026, Defendant Circle K sent Plaintiff approximately 350 unsolicited marketing text messages to encourage him to purchase goods and services from Circle K stores. These text messages include approximately 160 text messages sent before 8:00 a.m. local time. Plaintiff brings claims under the Telephone Consumer Protection Act and Arizona state law.

**Discovery Disputes**

The parties have various discovery disputes. At Doc. 82, this Court permitted the parties to <u>jointly</u> file certain discovery dispute motions. Plaintiff has <u>unilaterally</u> filed the discovery dispute motions. Plaintiff filed a notice at Doc. 95 regarding why the filings are not in compliance with the Court's order at Doc. 82. As best the Court can understand Doc. 95 and the response and reply thereto, the parties strongly disagree as to who is responsible for the failure to comply with the Court's order. The Court's preliminary

understanding is that both parties are at fault, at least to some degree.

Defendant has filed responses to each of Plaintiff's motions to compel. The Court will review the motions and responses to avoid further delay notwithstanding the fact that they were filed in violation of the leave granted at Doc. 82. The Court notes that Doc. 82 allowed each party to have limited pages to state their respective positions; and the motions and responses somewhat follow that format. However, the Court will not read Plaintiff's replies as they clearly violate the Order at Doc. 82. The Court rules as follows.

**Interrogatory 1**

Plaintiff asks Defendant to "Identify each Person and entity that operated Short Code 25050 during the Relevant Time Period and each Person that transmitted, or caused to be transmitted, the Messages to Plaintiff's Number." (Doc. 96-1 at 2). Defendant responded: "Circle K operates short code 25050 through Adobe, Infobip, and Cassie. Adobe is Circle K's CRM platform that it uses to execute communication like an SMS message. Circle K uses Adobe to determine who to send the message, what to send, and then to send the message. Infobip is an SMS service provider that enables Circle K to send text messages via short code. Cassie is a consent management system that Circle K uses to record consent, i.e., opt-in or opt-out." (*Id.*).

In his motion to compel, Plaintiff complains that this response is inadequate because it does not identify each natural person or entity that "operated" short code 25050. (Doc. 96 at 3). Defendant's response to the interrogatory, read literally, suggests that Adobe acts independently to decide to whom to send messages. It would seem logical, however, that at some point someone gave Adobe parameters of who to message. In other words, Adobe did not start from a premise, the Court would assume, of messaging every possible phone number in Arizona via a number generator. The Court interprets Plaintiff's request as seeking information about who programmed Adobe, and Defendant's response does not answer that question.

In its response to the motion to compel on Interrogatory 1, Defendant complains that the parties have not met and conferred about this request. Defendant repeats this

argument with respect to most of the other motions to compel as well. Throughout this Order, the Court will not engage with Defendant's arguments that the parties have not met and conferred about a particular request. The thrust of many of Defendant's arguments is that after Defendant supplemented its original responses, a new meet and confer was required. While Defendant may well be right that the meet and confer requirement has not been fully satisfied, the parties clearly met, at length. The Court is not going to take the time to try to split hairs of what the breadth of those meetings entailed, particularly when it is undisputed that they involved the interrogatories that are the subject of the pending motions.

Defendant also argues: "The interrogatory asks for persons who 'operated' the short code, yet [Plaintiff's] vaguely worded motion seems to demand names of individuals who 'enter the phone number into Infobip.' This is entirely different than 'operating' a short code. Further, as repeatedly explained to Plaintiff, Circle K maintains over 121,000 employees throughout the world, including thousands of employees in its loyalty, branding, CRM and marketing departments throughout several business units in the United States alone. It would be literally impossible for Circle K to identify 'each Person' who had any connection to or 'operated' the 25050 short code during the multiple years in question."

Based on the foregoing, it would appear that the Court and Defendant interpreted what Plaintiff meant by "operated" differently. And Plaintiff's motion does not unequivocally explain what he seeks. Thus, the Court agrees with Defendant that it is unclear by Plaintiff's use of "operated" exactly what Plaintiff is seeking. As a result, the Court finds Defendant's response to Interrogatory 1 to be sufficient on this record, and the motion to compel (Doc. 96) is denied.

**Interrogatory 2**

Plaintiff asks "If Circle K contends it did not itself transmit the Messages, Identify the Messaging Vendor(s) that did and describe Circle K's contractual and agency relationship with each." (Doc. 97-1). Defendant incorporates its response to Interrogatory 1. Defendant further responds and says it does not dispute "its role" in sending the

messages. (Doc. 117). The Court finds this portion of Defendant's response to be unclear because "its role" is undefined. Similarly, however, the word "transmit" in Plaintiff's interrogatory is also undefined.

On this record, the Court finds that Defendant's response identifies the messaging vendors it uses and briefly describes what each vendor does sufficiently to explain the relationship (the Court makes no ruling on agency by this Order). Thus, the motion to compel (Doc. 97) is denied.

**Interrogatory 3**

Plaintiff's "Interrogatory 3 asks, for each transaction Circle K relies on to establish Plaintiff's consent, the date, time, store identifier, address, register or fuel pump identifier, items purchased, and the payment card used." (Doc. 98-1 at 2). Defendant objects that this request is unduly burdensome. Plaintiff's request is limited to transactions Defendant relies on to establish Plaintiff's consent. While the Court agrees that the approximately 350 text messages at issue in this case is a burdensome amount of evidence all around, surely Defendant does not believe that it does not have to produce evidence it will rely on at summary judgment and/or trial. The Court overrules the unduly burdensome objection.

Notwithstanding its objection, Defendant states it will produce responsive documents. (Doc. 98-1 at 2). The Court set August 26, 2026, as the deadline for Defendant to supplement all responses. (Doc. 82). Plaintiff claims a complete supplement has not been forthcoming.

Defendant states that it has completely produced all responsive information. (Doc. 118). Specifically, Defendant states, "Fed. R. Civ. P. 33(d) allows Circle K to produce business records in response to interrogatories. As explained in detail, Circle K promised to, and did, produce both internal records (CK000053–98) and subpoenaed bank records correlating to every transaction at issue." (*Id.*).

By the foregoing, Defendant has effectively stated that it has produced all responsive information in its possession or custody.[1] Neither party makes any argument

[1] Generally, a party need only produce documents in that party's possession, custody or control. *See Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 465 (D. Ariz. 2020), *aff'd,* No.

regarding whether information maintained by the vendors is in Defendant's control. On this record, there is nothing further in Defendant's possession for the Court to compel Defendant to produce. Accordingly, the motion to compel (Doc. 98) is denied. At summary judgment and at trial, as far as documentary evidence is concerned, Defendant will be limited to the evidence produced (or supplemented) to prove Plaintiff's consent.

**Interrogatory 4**

Plaintiff seeks: "For each such transaction, state the factual basis for Circle K's contention that Plaintiff—as opposed to any other Person—entered Plaintiff's Number, and Identify all evidence supporting that contention." (Doc. 99-1). Defendant responded (in relevant part), "Documents concerning details of the transactions at issue have been produced as CK000053-98, and in the subpoena duces tecum responses from Wells Fargo and U.S. Bank. … Even assuming Plaintiff did not personally enter his phone number during the transactions at issue, another Circle K customer (or customers) did. Evidence concerning the identity of that customer or customers, and any consent or permission provided to that customer by Plaintiff (if not entered by Plaintiff himself), is being investigated through discovery. The 'purchase records' noted in Circle K's initial response have been produced. In the spirit of cooperation, Circle K is still investigating additional potential documents concerning the transactions and the consent provided, including documents showing the full SMS record to and from the mobile phone number at issue…. To the extent such documents exist, Circle K expects that they will be produced within thirty days." (*Id.*).

Plaintiff claims that Defendant's response is inadequate. (Doc. 99). Defendant claims, "Circle K disclosed its contention, supporting records, process evidence, and the limits of current knowledge." (Doc. 119). By the foregoing, Defendant has effectively stated that it has produced all responsive information in its possession, custody or control; thus, there is nothing further for the Court to compel Defendant to produce. As a result, the motion to compel (Doc. 99) is denied. As Defendant discovers more information, it

---

20-17210, 2022 WL 259937 (9th Cir. Jan. 27, 2022).

must supplement its prior response as required by Federal Rule of Civil Procedure 26(e) within the time limits of this Court's Scheduling Order. Any information not disclosed will be precluded at summary judgment and trial and, thus, will not be available to show anyone (Plaintiff or otherwise) entered Plaintiff's phone number.

**Interrogatory 5**

Plaintiff requests: "State the total number of Opt-Out messages received from Plaintiff's Number with "Stop2End" and/or "Stop", and for the first such Opt-Out of each Opt-Out keyword, describe how Circle K's systems processed it and why Messages continued thereafter." (Doc. 100-1). Defendant objected that this request was unduly burdensome. Defendant then responded (in relevant part): "Circle K will produce records demonstrating the messages sent to and received from Plaintiff's phone. Documents concerning details of the transactions at issue have been produced as CK000053-98, and in the subpoena duces tecum responses from Wells Fargo and U.S. Bank…. Even assuming Plaintiff did not personally enter his phone number during the transactions at issue, another Circle K customer (or customers) did. Evidence concerning the identity of that customer or customers, and any consent or permission provided to that customer by Plaintiff (if not entered by Plaintiff himself), is being investigated through discovery. Circle K is still investigating additional potential documents concerning the transactions and the consent provided, including documents showing the full SMS record to and from the mobile phone number at issue. This information is generally collected and stored by Infobip. To date, Infobip has not provided relevant data to Circle K despite several requests. The matter has now been escalated and counsel for Circle K has been in contact with Infobip directly. To the extent such documents exist, Circle K expects that they will be produced within thirty days."

In responding to Plaintiff's motion, Defendant states that it has received the information from Infobip and will produce such information to Plaintiff. (Doc. 120).

Because Defendant originally produced all information in its possession, custody or control, and because Defendant intends to supplement (within the deadline set in this

Court's Scheduling Order) with the information from Infobip, the Court deems this dispute to be resolved. The motion to compel (Doc. 100) is denied as moot.

**Interrogatory 6**

Plaintiff asks Defendant to: "Describe the factual basis for each of Circle K's affirmative defenses of consent and established business relationship as applied to Plaintiff." (Doc. 101-1). Defendant responds (in relevant part): "Documents concerning details of the transactions at issue have been produced as CK000053-98, and in the subpoena duces tecum responses from Wells Fargo and U.S. Bank…. The 'purchase records' noted in Circle K's initial response have been produced…. Circle K is still investigating additional potential documents concerning the transactions and the consent provided, including documents showing the full SMS record to and from the mobile phone number at issue. This information is generally collected and stored by Infobip. To date, Infobip has not provided relevant data to Circle K despite several requests. … To the extent such documents exist, Circle K expects that they will be produced within thirty days." (*Id*.).

Plaintiff claims the response from Defendant is inadequate. By the foregoing, Defendant has effectively stated that it has produced all responsive information in its possession, custody or control; thus, there is nothing further for the Court to compel Defendant to produce. (Doc. 121). As a result, the motion to compel (Doc. 101) is denied. As Defendant discovers more information, it must supplement its prior response as required by Federal Rule of Civil Procedure 26(e) within the time limits of this Court's Scheduling Order. Any information not disclosed will be precluded at summary judgment and trial and, thus, will not be available to show anyone (Plaintiff or otherwise) entered Plaintiff's phone number.

**Interrogatory 8**

Plaintiff seeks to have Defendant "[Identify] every Person or Messaging Vendor who was involved, influenced, or approved each Text Message Copy change related to Opt-In Messages, Opt-Out Messages, Discount Messages, Help Messages, and other Text Messages not specified." (Doc. 102-1). Defendant's response states (in relevant part):

"Circle K objects to the Interrogatory on the grounds that it is unduly burdensome, overly vague, and disproportionate to the needs of the case to the extent it seeks identification of 'persons' who were 'involved, influenced, or approved' each Text Message Copy change related to Circle K's messages. Subject to and without waiving its objections, Circle K incorporates its response to Interrogatory No. 1." (*Id.*) Defendant then goes on to explain why abbreviations are used. (*Id.*).

Plaintiff complains that this response explains <u>why</u> something was done, not <u>who</u> did the something. Defendant responds: "Circle K maintains over 121,000 employees throughout the world, including thousands of employees in its loyalty, branding, CRM and marketing departments throughout several business units in the United States alone. There are millions of customers in Circle K's SMS marketing program, and tens of millions of messages have been sent. It would be literally impossible for Circle K to identify 'each Person' who had any connection to the primary 25050 short code during the multiple years in question, let alone 'each text message' with any relation to Circle K. Even after Circle K unilaterally narrowed the scope **to focus on just the messages allegedly sent to Plaintiff, a reasonable investigation has identified no specific individuals responsible for their content.**" (Doc. 122) (emphasis added).

Based on Defendant's representation, the Court sustains Defendant's objection that to query each of 121,000 employees is disproportionate to the needs of this case. The motion to compel (Doc. 102) is therefore denied.

Nonetheless, specifically with respect to the portion of Defendant's investigation bolded above, the Court is sympathetic to Plaintiff's frustration that he seeks to query the decision maker regarding certain aspects of the messages sent to him; but, Defendant is such a large corporation, and messages so many customers so many times, that by the nature of Defendant's business, Defendant cannot determine who did what in any specific case. An inability of Plaintiff to obtain this information simply because Defendant is so large it does not know which employees do what may justify a spoliation instruction depending on how Plaintiff might argue this information is relevant. Therefore, the denial

of the motion to compel is without prejudice to Plaintiff seeking a spoliation instruction (due by the deadline for filing dispositive motions) on the basis that Defendant failed to maintain sufficient records to be able to identify any one of its "over 121,000 employees" who is actually responsible for any given message content to any given customer–including Plaintiff's messages specifically.

**Interrogatory 9**

Plaintiff asks Defendant to: "[Identify] every Person or Messaging Vendor who inquired, required, instructed, demanded, or asked for any changes to the Text Message Copy, including but not limited to the current CEO Alex Miller, the former CEO, presidents, vice presidents, other executives, board members, directors, managers, employees, and consultants." (Doc. 103-1). Defendant responds and incorporates its answer to Interrogatory 8. (*Id.*). Specifically, Defendant objected to Interrogatory 8 that the request is: "unduly burdensome, overly vague, and disproportionate to the needs of the case to the extent [this objection is specific to Interrogatory 8]." (*Id.*).

The Court sustains Defendant's objection that this request is overly broad. Thus, the motion to compel (Doc. 103) is denied.

**Interrogatory 10**

Plaintiff asks Defendant to: "[Identify] every Person or Messaging Vendor who discussed, communicated, suggested, or mentioned making any changes to the Opt-In Message copy, between the time period when a change was first communicated which resulted in any change to this version of the copy segment: 'Txt 'STOP' to Opt-Out' until the copy segment: 'STOP2End' was implemented permanently into production and after all approvals were completed." (Doc. 104-1). Defendant objects (in part) to Interrogatory 10 "on the grounds that it is unduly burdensome, overly vague, and disproportionate to the needs of the case to the extent it seeks identification of persons who 'discussed, communicated, suggested, or mentioned making any changes,' seemingly irrespective of whether any such 'discussions, communications, suggestions, or mentions' were incorporated." (*Id.*)

The Court sustains Defendant's objection that Interrogatory 10 is unduly burdensome and disproportionate to the needs of the case. Thus, the motion to compel (Doc. 104) is denied.

**Interrogatory 11**

In Interrogatory 11, Plaintiff asks Defendant to: "[Identify] every Person or Messaging Vendor who discussed, communicated, suggested, or mentioned any risks or concerns related to making any changes to the Opt-In Message copy, between the time period when a change was first communicated which resulted in any change to this version of the copy segment: 'Txt 'STOP' to OptOut' until the copy segment: 'STOP2End' was implemented permanently into production after all final approvals were completed." (Doc. 105-1 at 2). Defendant incorporated the response to Interrogatory 10. (Doc. 105-1 at 2).

The Court sustains Defendant's objection that this Interrogatory is unduly burdensome and disproportionate to the needs of the case. Thus, the motion to compel (Doc. 105) is denied.

With respect to Interrogatories 10 and 11, it is the Court's understanding from other filings in this case that Plaintiff has a theory that changing the stop opt out to the stop2end opt out was nefarious in some way, which Plaintiff intends to argue at summary judgment and/or at trial. As discussed more fully below, to the extent Plaintiff seeks testimony that binds the Defendant regarding why this change was made, a Federal Rule of Civil Procedure 30(b)(6) deposition is likely the best discovery tool.

**Interrogatory 13**

Plaintiff asks Defendant to: "Describe each method, if any, by which Circle K or its systems — including the LIFT System and the Point-of-Sale and fuel-pump terminals — verify, authenticate, or record the identity of the natural person who enters a telephone number, including any use of government identification, account login or credentials, biometrics, signature, or matching of the entered telephone number to the name on the payment card or loyalty account; and state whether any such identity verification or authentication was performed for, or exists for, any entry of Plaintiff's Number." (Doc.

106-1 at 2).

Defendant responded: "Circle K[] utilizes a double opt-in confirmation to confirm that the phone whose number was entered wish to receive messages from Circle K. At the point of sale, a phone number is entered following a specific prompt to the customer to enroll: 'If you are not enrolled in the Inner Circle Program, you are consenting to receive marketing text messages from Circle K by entering your mobile phone number.' Following entry of the phone number, Circle K sends the following message to confirm enrollment: 'Welcome to Circle K! Reply YES to subscribe and receive special offers, updates, and more. Txt HELP4Info, STOP2End. Msg&Data rates may apply.'" (*Id.*).

Plaintiff complains that he seeks the name of the person who enters the number (and information about how that person verifies identity). Defendant's response, written in passive voice, explains when a text is sent, but not by whom (or by no person if by automation).

By negative implication, it seems to the Court that Defendant is saying the customer is the human that enters the phone number, which triggers an automated response. But Plaintiff is correct that the answer does not directly state this information.

Defendant more or less confirms the Court's understanding in its response to the motion to compel, stating, "… as repeatedly explained to Plaintiff, Circle K does not collect or store any personally identifying information about its customers beyond entered phone numbers or email addresses. While those numbers can be matched to their corresponding transactions, there is not a separate 'ID check' at Circle K cash registers." (Doc. 126).

Plaintiff's motion to compel (Doc. 106) is granted to the limited extent that Defendant must supplement its response to Interrogatory 13 to affirmatively state there is no natural person on Defendant's end that enters the phone numbers on Defendant's end, nor performs identity confirmation checks (Defendant should include this response only if it is true; alternatively, Defendant may supplement with whatever direct response to Plaintiff's Interrogatory is true). Based on Defendant's response to the motion to compel, it would appear Plaintiff already has this information in an informal way, but Defendant

must formally put such information in a supplement to properly respond to this Interrogatory. Plaintiff's motion to compel (Doc. 106) is denied in all other respects.

**Interrogatory 14**

Plaintiff seeks "Separately as to (a) enrollment and (b) each of The Messages (e.g. the approximately 350 entries of Plaintiff's telephone number) on which Circle K relies, state whether Circle K contends that Plaintiff — the natural person Daniel D'Agostino, as distinct from the telephone number ending in 2065 — personally enrolled in the Inner Circle or any Circle K text-message program and personally entered the number; and if so, Identify all evidence that the person who enrolled and who entered the number was Plaintiff himself, rather than any other person." (Doc. 107-1 at 2). Defendant responds, "Circle K contends that Plaintiff personally enrolled (either himself or through an agent/person with his consent) for each transaction in which his credit card was used. Circle K presumes that Plaintiff's phone number and credit cards are only used by himself or those authorized to act on his behalf. Circle K further incorporates its response to Interrogatory No. 4." (*Id.*).

Plaintiff argues Defendant's response is inadequate because it does not say "yes or no" to whether Defendant contends that Plaintiff entered his number (personally) for each transaction. (Doc. 107).

The Court's interpretation of Defendant's response is that Defendant contends that Plaintiff or his agent personally entered Plaintiff's phone number every time Plaintiff's credit card was used; and Defendant does not contend Plaintiff (or Plaintiff's agent) entered Plaintiff's phone number every time Plaintiff's credit card was not used. Then, via Defendant's incorporation of its response to Interrogatory 4, Defendant contends Plaintiff can determine which entries of Plaintiff's phone number were in conjunction with the use of Plaintiff's credit card or someone else's credit card. By implication, the Court interprets Defendant's response to be that there were no text messages sent that were not generated by the entry of Plaintiff's phone number at a Circle K.

As discussed more fully below, Defendant's responses are technically responsive but not robustly forthcoming. Assuming the preceding paragraph fully encapsulates

Defendant's true meaning behind its response, there is no more information to compel. To the extent the Court misinterprets some nuance of the response, Defendant has a duty to supplement the response and express its true meaning in a more forthcoming way within 30 days. Thus, the motion to compel (Doc. 107) is denied except for the possible supplementation discussed herein.

**Interrogatory 15**

In Interrogatory 15, Plaintiff asks for Defendant's contention regarding: "If, as to any enrollment or any entry of Plaintiff's Number, Circle K cannot identify by name the natural person who enrolled or entered it, state whether Circle K nonetheless contends that the enrollment or entry establishes Plaintiff's consent or an established business relationship with Plaintiff, and if so, state the complete factual and legal basis for attributing that act to Plaintiff." (Doc. 108-1 at 2). Defendant responded: "Circle K contends that the enrollment or entry of Plaintiff's phone number establishes Plaintiff's consent and business relationship and thus permits Circle K to send[] the opt-in confirmation message to the phone number that was entered and enrolled. Circle K currently has no means of identifying the natural person who entered Plaintiff's phone number other than by the entered phone number itself, the relevant transaction records, and banking records associated with the underlying transactions. Circle K further incorporates its response to Interrogatory No. 4." (*Id.*).

Plaintiff complains that Defendant did not explain the factual and legal basis for its response. (Doc. 108). Defendant responds and argues that it answered Plaintiff's contention and either offered or incorporated all evidence Defendant has regarding "who" entered the phone number.

The Court agrees that Defendant has fully responded to this interrogatory (subject to the duty to supplement if Defendant obtains additional information). Accordingly, the motion to compel (Doc. 108) is denied.

**Interrogatory 17**

Plaintiff asks Defendant to: "Describe Circle K's policies and systems for

maintaining an internal do-not-call list and honoring Opt-Outs during the Relevant Time Period, and Identify the Persons responsible for them." (Doc. 109-1 at 2). Defendant responds (in part): "Circle K objects to the Interrogatory on the grounds it is unduly burdensome and disproportionate to the needs of the case to the extent it seeks identities of persons 'responsible' (whatever that undefined term may mean) for Circle K's policies and systems for maintaining an internal do-not-call list and honoring opt-out requests. Subject to and without waiving its objections, Circle K states that it utilizes Adobe / Infobip to conduct its text messaging. To the extent an un-enrollment text message is sent in response, Cassie records consent or lack thereof and the system automatically causes the sending of an opt-out confirmation message and un-enrollment from Circle K's text messaging program. If the number is re-entered and thus re-enrolled, however, Adobe / Infobip sends the same double opt-in confirmation message to ensure the customer wishes to subsequently receive marketing messages. To the extent a written do-not-call request (or other non-text message request) is sent to Circle K, Circle K enters the phone number in the Infobip system to record the do-not-call request. Circle K's customer service staff are trained to route do-not-call requests to the CRM team within Circle K, who enter the phone number in Infobip to record the do-not-call request. Circle K honors all do-not-call requests indefinitely—provided that the customer does not re-enroll to receive messages. Circle K sends messages only to those customers who affirmatively consent to receive messages." (*Id*. at 3).

Plaintiff argues that Defendant's response says things like "Circle K enters a number" but does not name a particular individual(s) who enters the number on Circle K's behalf. (Doc. 109). Defendant responds and suggests that the CRM team is the "persons" who enter the number. (Doc. 129 at 3). Defendant continues "… Plaintiff [is not] entitled to a list of contact information for every single person that works (or has worked) on Circle K's CRM team." (*Id*.).

The Court sustains Defendant's objection that Plaintiff's request in Interrogatory 17 is disproportionate to the needs of this case. As Defendant notes "responsible" could be

broadly read to include everyone in the chain of command, whether directly or indirectly "responsible" for various decisions Defendant makes (in addition to all past and present members of the CRM team). It is not Defendant's responsibility to narrow (or interpret) the scope of Plaintiff's request. *See* Doc. 82 at 3 (quoting *Complot v. Mission Lane LLC*, CV 26-1623-PHX-KML at 2-3 (D. Ariz. July 9, 2026)). Additionally, as discussed more fully below, questions about "policies" and "systems" that apply company-wide are likely best probed in a Federal Rule of Civil Procedure 30(b)(6) deposition. Accordingly, the motion to compel (Doc. 109) is denied.

**Interrogatory 19**

Plaintiff asks Defendant to: "Identify each Person, team, department, Messaging Vendor, agency, or consultant responsible for deciding, approving, or testing The Message Copy, Opt-Out keyword(s), Opt-In keywords, Keyword Configuration, send times, send frequency, or Opt-Out handling of the text-message program associated with Short Code 25050, and describe each one's role." (Doc. 110-1 at 2). Plaintiff states that he narrowed this request by email to "Short Code 25050, to opt-in text copy changes, and to 2023 through April 2025, and asked for 'the names, employers and roles of the natural persons involved'; if a change came from a parent company, business unit, subsidiary, affiliate or vendor, the scope follows it to its source." (Doc. 110 at 2). Defendant responds (in part): "Circle K objects to the Interrogatory on the grounds that it is unduly burdensome, overly vague, and disproportionate to the needs of the case to the extent it seeks the identification of either persons, teams, departments, or others responsible for deciding, approving, or testing various defined terms, send times, send frequency, or opt-out handling (whatever that may mean), all of which Circle K objects to. The requested information is disproportionate because Circle K does not dispute having sent the messages or that it directed Plaintiff to respond "STOP" to (2) end the messages. Neither does Circle K dispute that it sent each subsequent opt-in confirmation message as a direct result of Plaintiff's phone number being entered during a transaction. Identification of persons and their roles have no bearing on the disputed issues in this case." (Doc. 110-1 at 2).

The Court sustains Defendant's objection that this request is unduly burdensome, overly vague (and resultantly broad) and disproportionate to the needs of this case. Accordingly, the motion to compel (Doc. 110) is denied. As discussed elsewhere herein, a Federal Rule of Civil Procedure 30(b)(6) deposition is likely a better vehicle to probe company-wide systems and decisions if they are relevant.

**Interrogatory 21**

Plaintiff asks Defendant to: "State the total number of Text Messages sent to Plaintiff's Number during the Relevant Time Period, and the number sent before 8:00 a.m. local time." (Doc. 111-1 at 2). Defendant objected to this request, but then agreed to respond in full. (*Id.*).

Plaintiff complains that none of this information has been produced. (Doc. 111). Defendant responds that Plaintiff has this information in his own possession on his phone – namely what texts he received, what texts he sent and what time these transactions occurred. (Doc. 131). Defendant continues that it received the responsive information from a vendor on September 23, 2026, and that Defendant will produce the information by October 23, 2026. (*Id.*).

The Court accepts Defendant's representation that it will produce the responsive information by October 23, 2026. Accordingly, the motion to compel (Doc. 111) is denied.

**Interrogatory 22**

Plaintiff asks Defendant to: "Identify each Person who provided information for, or has knowledge of the facts stated in, the Declaration of Carly Lee, and state the basis for the declarant's knowledge of how she knew Plaintiff — the natural person Daniel D'Agostino, as distinct from the telephone number ending in 2065 — personally enrolled in the Inner Circle or any Circle K text-message program, personally entered the number, and purchased the items for every transaction in the Transaction Logs; and if so, Identify all evidence that the person who enrolled, who entered the number, and purchased the items was Plaintiff himself, rather than any other person." (Doc. 112-1). Defendant objects, and without waiving those objections, states, "No person provided information to Carly Lee.

Ms. Lee reviewed the relevant business records herself. Circle K further incorporates its responses to Interrogatory Nos. 4 and 8." (*Id.*).

Plaintiff complains that the response does not address what records Ms. Lee reviewed or how Ms. Lee "knew" Plaintiff. (Doc. 112). Defendant responds that the response provided answers the interrogatory. The Court agrees. The motion to compel (Doc. 112) is denied. If Plaintiff believes there is further relevant, non-privileged information he needs from Ms. Lee, he should take Ms. Lee's deposition.

**Other Requests**

At bottom, Plaintiff seems to have some very specific questions that he is having a difficult time pinpointing in writing in a narrow, non-objectionable way. And Defendant seems to be determined to be as technical as possible in not robustly responding. These two competing positions do not lend themselves to the interrogatory process. Plaintiff would likely have a more productive result by taking a Federal Rule of Civil Procedure 30(b)(6) deposition. The Court will not order Defendant to pay for the deposition in advance. However, if Plaintiff can show after the deposition–by the answers given in the deposition–that Defendant was not forthcoming in the interrogatory responses, Plaintiff can move for his deposition costs as a sanction (by citing the controlling law or Rule that Defendant is alleged to have violated) within 30 days of completing the Rule 30(b)(6) deposition. Plaintiff's request for 40 interrogatories is denied. Plaintiff's request to strike Defendant's answer is denied. Plaintiff's request for any other sanctions at this time is denied.

Defendant seeks leave to file a motion for attorney's fees for having to respond to Plaintiff's 17 motions in limine. Federal Rule of Civil Procedure 37(a)(5)(B) says that upon denying a motion to compel, the Court should require the payment of attorney's fees. Defendant can move for its attorney's fees for the motions to compel denied above. In any such motion Defendant must first show its entitlement to fees (under the appropriate statute, Rule, and/or caselaw) and apply all relevant tests thereunder. The basis for the entitlement to fees cannot be the Order at Doc. 82, as the Court has determined above that

both parties bear some responsibility for the failure to timely make a joint filing. Thus, the entitlement showing must be based on the merits of the motions to compel, responses and the Court's ruling. Further, both parties must address the exception to Rule 37(a)(5)(B) that, "But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Both parties must also address that if disclosure was made after the motion was filed, the Rule states that such situation should be considered the motion to compel being granted. Fed. R. Civ. P. 37(a)(5)(A). Assuming Defendant can show an entitlement to fees, Defendant must also show that the requested fees are reasonable (and limited to the discovery issues on which Defendant prevailed).

**Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the motion to compel (Doc. 96) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 97) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 98) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 99) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 100) is denied as moot.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 101) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 102) is denied, but Plaintiff may move for a spoliation instruction related to Interrogatory 8 (only) by the dispositive motion deadline as specified above.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 103) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 104) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 105) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Doc. 106) is granted to the limited extent that Defendant must supplement its response to Interrogatory 13 to affirmatively state a direct answer to Plaintiff's Interrogatory 13 as specified above.

Plaintiff's motion to compel (Doc. 106) is denied in all other respects.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 107) is denied except for the possible supplementation discussed herein.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 108) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 109) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 110) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 111) is denied.

**IT IS FURTHER ORDERED** that the motion to compel (Doc. 112) is denied.

**IT IS FURTHER ORDERED** that, if after taking a Federal Rule of Civil Procedure 30(b)(6) deposition, Plaintiff can meet the criteria above for seeking sanctions, Plaintiff may move for his costs as a sanction within 30 days of completing the deposition. Plaintiff's request for any other sanctions is denied at this time.

**IT IS FURTHER ORDERED** that Defendant may move for its attorney's fees as specified above within 14 days of the date of this Order. The response and reply times shall be governed by the Civil Local Rules.

Dated this 2nd day of October, 2026.

James A. Teilborg
Senior United States District Judge