**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Daniel D'Agostino,

Plaintiff,

v.

Circle K Stores Incorporated, et al.,

Defendants.

No. CV-26-01225-PHX-JAT

**ORDER**

Pending before the Court is Plaintiff Daniel D'Agostino's Motion for Leave to File a Second Amended Complaint. (Doc. 94). The matter is briefed, (Docs. 94, 113, 114), and the Court now rules. Because the proposed changes to the Amended Complaint would not affect the scope of the litigation, the Court concludes that amendment would be futile and therefore will permit Plaintiff to clarify only the number of early-morning messages he allegedly received from Defendant Circle K and the statutory damages he seeks as a result.

## I. BACKGROUND

In his initial Complaint, Plaintiff alleges that, from September 1, 2023, to February 5, 2026, Defendant sent him 350 unsolicited marketing text messages. (Doc. 1 at ¶¶ 23-24). He alleges multiple claims under the Telephone Consumer Protection Act ("TCPA") and Arizona state law. At this time, those claims are: (1) Willful Violation of the TCPA; (2) Willful and Knowing Violation of the National Do Not Call Registry; (3) Willful and Knowing Violations of Federal Quiet Hours; (4) Willful Violation of Internal Do-Not-Call

Procedures; and (5) Common Law Intrusion upon Seclusion.[1] (Doc. 81 at 19-28).

After some discovery, Plaintiff seeks leave to file a Second Amended Complaint. (Doc. 94). But he does not intend to add any new cause of action, join any new party, or request any new form of relief. (Doc. 94 at 2). Rather, he would generally update his pleading to reflect a regulatory change and certain information not previously available. *See generally* (Doc. 94-1).

First, Plaintiff would add an additional 14 early-morning text messages from Defendant to his total count, thus alleging that Defendant sent him a total of 160 unsolicited early-morning messages. (Doc. 94 at 6). He would also change figures in his complaint—including his requested statutory damages—to reflect that new number. (Doc. 94-1, at 6, 28). Second, Plaintiff would add paragraphs or edits to existing paragraphs that bolster his arguments with findings unearthed in discovery. Third, Plaintiff would update a deadline throughout the pleading to reflect a regulatory change. (*Id*. at 9, 28-29). Finally, Plaintiff would make several superficial edits and update the exhibit numbers to which he cites. *See, e.g.*, (*id*. at 5, 19).

Defendant is fully opposed to Plaintiff's motion. In its view, "there is no need for the amendment adding facts allegedly learned in discovery regarding [Plaintiff's] already-pled claims." (Doc. 113 at 2). Indeed, Defendant continues, a situation "where any new facts or documents reviewed in discovery may lead to an amended complaint" conflicts with the purpose and intent of the Federal Rules of Civil Procedure. (*Id*. at 5). For the most part, the Court agrees with this line of reasoning.

## II. LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure governs this Motion and provides that a party may amend a pleading once as a matter of course and otherwise with the other party's consent or the Court's leave. Fed. R. Civ. P. 15(a). Because he has already amended his complaint once and Defendant does not consent to the current Motion, Plaintiff must

[1] The Court previously dismissed a claim for Willful Violation of the Arizona Consumer Fraud Act and a claim for Breach of Implied-in-Fact Contract and Promissory Estoppel with prejudice. (Doc. 35). The Court also precluded Plaintiff from filing three additional claims in his first Amended Complaint. (Doc. 80 at 4-10).

therefore obtain leave from this Court to further amend his complaint. Rule 15 advises that courts should freely grant leave to amend "when justice so requires," *id*. at 15(a)(2), and the Ninth Circuit Court of Appeals likewise advises that such leave be given with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

But liberal policies should not be taken as absolute. Whether to grant leave to amend a complaint depends on five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended [his] complaint" *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (internal quotations and citation omitted). When determining the futility of an amendment, the Court may look to the sufficiency of the complaint as described in Rule 8 and Rule 12(b) of the Federal Rules of Civil Procedure. *Enriquez v. Aurora Loan Servs.*, 509 Fed. App'x 607, 608 (9th Cir. 2013); *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (upholding dismissal of the second amended complaint for violating Rule 8).

A sufficient complaint requires "a short and plain statement of the claim" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In requiring this low standard of pleading, the Federal Rules aim to focus the parties and the Court on the merits of a claim rather the beautification of the pleadings. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see* Charles E. Clark, *The New Federal Rules of Civil Procedure: The Last Phase*, 23 A.B.A. J. 976, 977 (1937) ("[A court] cannot expect the proof of the case to be made through the pleadings, and . . . such proof is really not their function.").

## III. ANALYSIS

The problem with many of Plaintiff's proposals is that they do not refocus or shift the litigation such that the First Amended Complaint could no longer guide the litigation. Rather, they garnish the pleading, adding evidence and argumentation to the preexisting claims and allegations against Defendant. To illustrate this point better, the Court will first address the proposed paragraphs and headers before turning to the smaller edits.

**A. Proposed Addition of Paragraphs**

The first substantive addition proposed would occur in ¶ 49 of the First Amended Complaint, which alleged that "Plaintiff never entered his number . . . at any Circle K terminal, website, or mobile application, and never enrolled in the Inner Circle program or any Circle K text-message program." (Doc. 81 at 10). Plaintiff would add that, based on certain discovery findings, "Circle K's own transaction data is consistent with that fact and contains nothing to the contrary." (Doc. 94-1 at 10). That embellishment does not make any further allegation, add any new claim, or implicate any new party; it instead seeks to append documentation from discovery efforts to support Plainitff's claim.

The second such addition would substantiate ¶ 51 of the First Amended Complaint, which alleged that, if "anyone entered Plaintiff's number, [Circle K's records] identify that person, and that person was not Plaintiff." (Doc. 81 at 10). Plaintiff would add a section titled "Defendant's Own Records Show the Account It Tied to Plaintiff's Number Belongs to Someone Else." (Doc. 94-1 at 11-12). The paragraphs under that heading aim to prove that certain transactions with Defendant were not made by Plaintiff, but by a third party. (*Id.*). Once again, these proposed additions would only serve to strengthen the statement alleged in the First Amended Complaint using information obtained through discovery.

To similarly support Plaintiff's contentions in ¶ 49 of the First Amended Complaint, the next proposal would add a section titled "Defendant Has No Record That Anyone Ever Enrolled This Account." (*Id.* at 12-14). Plaintiff aims to communicate that records from discovery allegedly show that his purchases from Circle K are connected to the third party's account number. Once more, however, the supporting section merely introduces potential evidence to help prove a point Plaintiff already made in the First Amended Complaint.

Finally, Plaintiff requests adding a new section boldly titled "Defendant's Records Cannot Be Relied Upon to Establish Anything." (*Id.* at 21-22). The paragraphs under that header aim to discredit certain evidence provided by Circle K which it might use to show that Plaintiff consented to the messages. (*Id.*). This section again raises no allegations, claims, or parties that were not present in the First Amended Complaint; rather, this seems

to outline a possible evidentiary disagreement.

These additions are ultimately futile. Complaints are not designed to be amended throughout the discovery period. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 842 (9th Cir. 2007). Rather, they are meant to lay the groundwork for discovery and outline claims to be litigated. *See McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996). If Plaintiff does not intend to assert a new cause of action, theory of relief, or join a new party, but instead to bolster his claims, there is therefore "no need to file an amending complaint under the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." *See Lemme v. City of Yuma*, No. CV-05-03705-PHX-JAT, 2006 WL 8440313, at *5 (D. Ariz. Oct. 19, 2006).

Because such pointlessness makes the proposed Second Amended Complaint futile, the Court will not grant Plaintiff leave to make the changes discussed in this subsection. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir.1987) ("It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language or reasserts a claim previously determined."); *see also Garcia v. City of Chi., Ill.*, 24 F.3d 966, 970 (7th Cir. 1994); *Nelson v. United States*, 392 Fed. App'x 681, 684 (11th Cir. 2010). This is not to say, as Defendant points out, that the information Plaintiff obtained through discovery cannot be used to prove the merits of the claims outlined in the First Amended Complaint. (Doc. 113 at 2).

**B. Proposed Correction of Alleged Messages**

The second substantive addition Plaintiff proposes would increase the number of alleged early-morning messages sent by Defendant from 146 to 160.[2] (Doc. 94-1 at 2, 4, 6, 27-28, 31, 33-34). Relatedly, Plaintiff moves for leave to amend the requested statutory damages and the percentage of early-morning messages compared to other messages to reflect the higher alleged number. (*Id*. at 6, 27-28, 34). Defendant advances no argument

---

[2] Plaintiff also hopes to change the number of alleged standard marketing solicitations from 344 and 343. Upon reflection of the factors articulated in *Molini*, 951 F.2d at 204, the Court finds no reason why Plaintiff should not be permitted to amend his complaint to reflect that corrected amount. Accordingly, the Court will grant Plaintiff leave to make this change in the complaint.

specifically targeting these proposed changes; it seemingly relies on the futility assertion above to challenge these additions. *See* (Doc. 113 at 3-4).

Unlike the paragraphs described above, the numerical corrections do not "merely reiterate and embroider" the presented claims. *See Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991). They instead affect the substance of the litigation, increasing the number of offending text messages alleged and raising the amount at stake. Put differently, these changes amend facts that must be proven by discovery rather than bolstering such facts. The futility problem articulated above is therefore not present here. *See McGucken v. Chive Media Grp.*, CV 18-01612-RSWL-KS, 2018 WL 3410095, at *6 (C.D. Cal. July 11, 2018).

Moreover, the Court concludes that the additional *Molini* factors weigh in favor of granting leave to include these changes in  new amended complaint. *See* 316 F.3d at 1051. There is no evidence of bad faith and, although Defendant argues that a new complaint may require it to spend additional response time (Doc. 113 at 5), the Court finds that this fear is unfounded. The small increase of alleged text messages sent to Plaintiff should not severely affect how Defendant goes about disproving the claims and answering the minor amendments allowed herein. It is certainly not prejudicial enough to justify denial. Given the weight of the *Molini* factors and the spirit of liberality present in deciding the Motion, *see Aspeon, Inc.*, 316 F.3d at 1051, the Court will grant leave to amend the complaint to reflect the changes discussed in this subsection.

**C. Proposed Miscellaneous Changes**

The remainder of Plaintiff's proffered changes would not affect the substance of the complaint and so the Court will not grant leave to amend as to those changes. The Court will begin with Plaintiff's request to update a regulatory direction so as to reflect its current iteration. (Doc. 94-1 at 9, 28-29). While the version of 47 C.F.R. § 64.1200(d)(3) cited in the previous complaints provided 30 days for an entity to honor a request to be placed on a do-not-call list, the version that became effective in April 2025 (and has not relevantly changed since) provided for 10 days to honor such a request.

Although Plaintiff correctly noted the change in the regulation, there is no need to update the Amended Complaint. This is because the version of the regulation operating at the time of the alleged event is applied by this Court as a matter of law. *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 682 (9th Cir. 2014). In other words, the Court would proceed in the same manner no matter the version of § 64.1200(d) Plaintiff elects to reference in his pleading. It would therefore be futile to make the desired updates in a Second Amended Complaint, and the Court accordingly denies Plaintiff leave to make any proposed edits regarding the regulation at issue.

Plaintiff would also make superficial edits to his First Amended Complaint, aiming to clear up a citation. (Doc. 94-1 at 19). That revision, however, is unnecessary and does nothing to further the purposes of a complaint; the Court and the parties would understand the scope of the claims with or without the cleanup Plaintiff proposes. Similarly, Plaintiff would add a citation to certain information to bolster his assertion that Defendant's service is intended to be used to sell products and services. (*Id.*). But that addition, too, would not serve any purpose other than to add evidentiary support to Plaintiff's previously outlined claims. Since information obtained in discovery that supports an asserted claim is intended to be used in later motions or at trial, there is no need to amend a complaint to feature such information. Finally, Plaintiff would update the exhibit numbers to which he cites. (*Id.* at 5, 25). That is unnecessary, the parties will re-submit the evidence with the proper labelling when the case arrives at summary judgment and/or trial.

## IV. CONCLUSION

"A district court does not err in denying leave to amend where the amendment would be futile." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted). In this case, only one set of Plaintiff's proposed additions would not be an exercise in futility. While increasing the number of early-morning messages Defendant allegedly sent would increase the scope of one of Plaintiff's claims, no other additions would have any effect on the claims, parties, or arguments at issue.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 94) is granted in part and denied in part as specified herein.

**IT IS FURTHER ORDERED** that Plaintiff shall (1) draft an amended complaint consistent with the foregoing order; and (2) file and serve the amended complaint on Circle K under Rule 5 of the Federal Rules of Civil Procedure within fourteen (14) days of the date of this order.

Dated this 5th day of October, 2026.

James A. Teilborg
Senior United States District Judge